**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **ANDREW H. STEVENS** | : | **Case No.** |
| 1734 Bryden Road | : | |
| Columbus, Ohio | : | **Judge** |
| | : | |
| | : | **Magistrate** |
| **MELANIE COPENHAVER** | : | |
| 1734 Bryden Road | : | **VERIFIED COMPLAINT for** |
| Columbus, Ohio | : | **DECLARATORY JUDGMENT AND** |
| | : | **INJUNCTIVE RELIEF** |
| **Plaintiffs,** | : | |
| | : | **Exhibit 1:** *Photographs of Plaintiff's Property* |
| **-vs-** | : | |
| | : | **Exhibit 2:** *"Violation Notice" and Correspondence* |
| **CITY OF COLUMBUS, OHIO,** | : | *regarding Violation Notice* |
| 77 North Front Street | : | |
| Columbus, Ohio 43215 | : | **Exhibit 3:** *Pertinent Ordinances, Regulations, and* |
| | : | *Map* |
| **TIMOTHY J. NOLL,** *in his official capacity as Code* | : | |
| *Enforcement Officer of the City of Columbus, Ohio* | : | **Exhibit 4:** *HRC Ruling and Minutes in Support* |
| 77 North Front Street | : | |
| Columbus, Ohio 43215 | | **Exhibit 5:** *Transcripts of Plaintiff's Hearings* |
| | | |
| **Defendants.** | | **Exhibit 6:** *Photographs of Neighborhood* |
| | | *Landscaping* |
| | | |
| | | **Exhibit 7:** *Verifying Affidavit of Plaintiff Andrew* |
| | | *Stevens* |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Now comes Plaintiffs, ANDREW STEVENS and MELANIE COPENHAVER, who, in support of

their Complaint for Declaratory Judgment and Injunctive relief states as follows:

**INTRODUCTION**

1.      This is an action for declaratory judgment, preliminary and permanent injunction, pursuant to 42

U.S.C. §1983, arising from Defendants' unconstitutional official conduct, policies, practices, regulations,

restrictions, threats, intimidation, and/or harassment.

2.      While Ohio cities may maintain latitude to regulate the preservation of real property with genuine

and demonstrable historic value, that latitude remains subject to constitutional limits.

1

3.      Specifically, the City of Columbus ("the City") claims the authority to prosecute and fine those whose garden, landscaping, or yard is not "compatible" with itself, the home, "adjacent properties," "open spaces," *and* "the overall environment."

4.      The City claims authority to prosecute and fine homeowners who alter their landscaping without first having proven that the alteration will result in "compatible" landscaping.

5.      The City claims the authority to prosecute and fine homeowners who, upon threat, fail to make landscaping "compatible."

6.      However, Plaintiffs' private property rights are fundamental rights pursuant to the Ohio Constitution, and Plaintiffs' right to harmlessly landscape their property is threatened and deprived solely due to impermissibly vague and arbitrary prohibitions and their impermissible application to Plaintiffs.

7.      Plaintiffs now faces an imminent risk of criminal prosecution and extensive daily fines merely because they created a garden and otherwise landscaped their own private property without first obtaining government approval of that landscaping as sufficiently "compatible."

8.      Due to Defendants' conduct, Plaintiffs face irreparable harm to their rights under the Fifth, Eighth, and Fourteenth Amendment to the United States Constitution and Sections 1, 2, 16, 19, and 20 of Article I of the Ohio Constitution.

9.      This harm may only be remedied by a ruling from this Court, and Defendant must be immediately and permanently enjoined from enforcing its "Landscaping Compatibility Mandate," as articulated in the City's Municipal Code Sections 3116.04, 3116.09, 3116.11, 3116.13, and 3116.27, whether to restrict protected property rights or to impose criminal, civil or equitable penalties, against Plaintiffs or others.

## PARTIES

10.     Plaintiff Andrew Stevens owns and resides at the home located at 1734 Bryden Road in Columbus, Ohio. *See Exhibit 1.*

11.     Plaintiff Melanie Copenhaver owns and resides at the home located at 1734 Bryden Road in Columbus, Ohio.  *See Exhibit 1.*

12.     Defendant City of Columbus is a municipal corporation in Franklin County organized under the Constitution and laws of the State of Ohio.

13.     The City is a state actor and is a municipal corporation unprotected by sovereign immunity for the purposes of this action.

14.     Defendant Timothy J. Noll is, and has been at all times relevant to the facts at issue in this case, a "Code Enforcement Officer" for the City of Columbus.

15.     The actions of Defendant Noll described herein were taken pursuant to official conduct on behalf of the City of Columbus, and were exercised under color of law.

16.     At all times relevant to the allegations in this Complaint, each and all of the Defendants' acts alleged herein are attributed to Mr. Noll were undertaken while acting under the color of regulations, customs, usages, and policies of the City.

17.     Mr. Noll threatens to undertake specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs in his individual capacity, as part of his official duties and responsibilities as an employee or agent of the City, and in his official capacity of implementing a policy, practice or custom of the City.

18.     All actions by the Defendants described herein were undertaken under color of state law and threaten to cause the deprivation of Plaintiffs' rights protected by the United States Constitution and Ohio Constitution.

## FACTS

19.     The "Bryden Road Historic District" consists of 259 structures.  *See Exhibit 3 (Map)*

20.     190 of the structures within the Bryden Road Historic District maintain gardens and there are at least 41 "retaining walls" within the District.  *See Exhibit 6* (examples aside from Plaintiff's home).

21.     Since purchasing the home in May of 2017, Mr. Stevens has made significant restorations, including but not limited to restoring the home to its original design as a single-family home and installing new roofing, electrical, plumbing, and HVAC systems.

22.     As a result of the extensive restorations of Mr. Stevens and Ms. Copenhaver, their home is now significantly more valuable.

23.     The slope of Plaintiffs' front yard hindered the planting, growing, and mowing of grass, leaving considerable dirt and mud.  *See Exhibits 1 and 5.*

24.     Plaintiffs' front yard, consisting of dirt, mud, and grass, continuously eroded or "washed out," flooding surrounding areas with dirt and mud in response to rain.  *Id.*

25.     To remedy the shortcoming with their front yard, on or about May of 2018 Mr. Stevens planted a garden, which included several small retaining walls to support the garden and curtail erosion.  *Id.*

26.     As a result of Plaintiffs' efforts, their front yard currently includes a terraced garden consisting of several levels and several short essential retaining walls.  *Id.*

### *The City's Mandate that Gardens, Yards, and Landscaping in Historic Districts be Approved as "Compatible" and "Appropriate"*

27.     CC Section 3116.04 indicates as follows:  "Except in cases excluded by C.C. 3116.23, no person shall construct, reconstruct, alter, change the exterior color of or demolish any listed property or architectural feature thereof or any structure or architectural feature now or hereafter in a district or make site improvements thereon without first applying for a certificate of appropriateness therefor and obtaining either such certificate of appropriateness or a clearance."

28.     While CC Section 3116.05 indicates "If the historic preservation officer determines that no architectural feature is involved, it shall cause staff to endorse on the application or to issue a clearance," CC 3116.011 provides that the term "architectural feature" includes *everything* "exposed to public view."

29.     CC Section 3116.09(B)(1) requires that alterations must be "appropriate" to obtain the "certificate of appropriateness" necessary to make or maintain landscaping changes.

30. CC Section 3116.11 indicates, in pertinent part, as follows: "The following standards shall apply to evaluation of the appropriateness of a proposed alteration: * * * (2) The distinguishing characteristics of the property shall not be destroyed. The removal or alteration of any historic material or distinctive architectural feature shall be avoided whenever possible * * *."

31. Neither "distinguishing" nor "distinctive" is defined in the City's Code.

32. CC Section 3116.13(A) indicates, in pertinent part, as follows: "(A) Landscaping, parking, utility or service areas, walkways and similar improvements should be compatible to each other and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment."

33. The governmental purpose underlying the foregoing regulations, as articulated in the City's municipal code and historic preservation guidelines, is the preservation of historically significant architecture.

34. The foregoing regulations subject homeowners that the City deems noncompliant to civil penalties up to $100 per day and criminal penalties up to a third degree misdemeanor carrying up to 60 days in jail. See Exhibit 2, Notice of Violation; see also CC 3116.26 (articulating civil penalties and specific performance); and 3117.27 (enforcing penalties articulated in Notices of Violation).

### The City's Enforcement of its Vague Prohibitions against Plaintiffs

35. The City purports to have applied CC Sections 3116.04, 3116.11(2), and 3116.13(A) to Plaintiffs.

36. On or about June 25, 2018, City of Columbus "Code Enforcement Officer" Tim Noll issued a "Columbus City Code Violation Notice" to Mr. Stevens, citing as a "violation" that "a retaining brick wall has been erected in the front yard without first obtaining the required certificate of appropriateness." *See Exhibit 2 (hereinafter "Notice of Violation.")*

37. The Notice of Violation further opined that Mr. Stevens violated the law because "[a]ny exterior change or alteration requires a certificate of appropriateness from the Bryden Historic District." *Id.*

38.     In support of the allegation of a "violation," the Notice of Violation cites CC Section 3116.04. *Id.*

39.     The Notice of Violation demands that "you are hereby given notice to correct the alleged violations . . . within 30 calendars days," and threatens that "failure to comply with this notice is a Misdemeanor of the Third Degree and may be punishable by . . . sixty days imprisonment," but also apprised Mr. Stevens that he may "appeal" with the City's "Historic Preservation Office." *Id.*

40.     Pursuant to CC 3116.27(E), "Any notice served shall automatically become an order if a written petition for a hearing before the board of commission appeals is not filed in the historic preservation office ten calendar days after such notice is served."

### *Mr. Stevens "appeals" to the City's "Historic Resources Commission," "Board of Commission Appeals," and "Environmental Court"*

41.     Mr. Stevens appealed the Notice of Violation to the City, who convened several "Historic Resources Commission" hearings on the matter. *See Exhibit 4 (HRC Ruling and Minutes)*

42.     On or about December 27, 2018, the City of Columbus Historic Resources Commission ("HRC") denied Mr. Stevens' appeal requesting retention of his garden. *Id.*

43.     In support of its denial of Mr. Stevens' right to landscape his front yard, the HRC reasoned as follows:

   a.  Mr. Stevens' landscaping failed the CMC 3116.13(A) requirement that "Landscaping . . . and similar improvements should be compatible to each other and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment." *Id.*

   b.  Mr. Stevens' landscaping failed the CMC 3116.11(2) requirement of "appropriateness." *Id.*

   c.  HRC "Commissioners" commented that even though Plaintiff "has done a great job on the house," Mr. Stevens' garden was "not in character with the neighborhood or the house" because it "was too suburban;" and "The Commission has to look at what Bryden Road was

about originally, with the continuous view down the street, and park-like setting with a continuous green lawn." *Id.*

44. Transcripts of Plaintiff's hearings reflect a host of subjective objections to Plaintiff's landscaping, relying on a wide variety of diverse criteria. *See Exhibit 5.*

45. Plaintiff appealed the HRC's denial of his appeal to the "Board of Commission Appeals" ("BCA") on or about January 16, 2019, and the BCA convened a hearing on the matter on March 28, 2019.

46. The BCA "minutes" describe Plaintiff's claims and objections differently than Plaintiff articulated those claims and defenses.

47. On April 4, 2019, the BCA, without written explanation, denied Plaintiff's appeal.

48. During its March 28, 2019 hearing, the City, by and through the BCA, clarified that it does not scrutinize the HRC's conclusions, explaining as follows:

   a. The BCA hearing is not a *de novo* hearing ("This is not a de novo hearing. This is based on the record below").

   b. The BCA does not review facts ("We're not reviewing any issue of fact; we're merely looking at the decision and discussion that occurred previously").

   c. The BCA does not review the law ("We are not a determiner of law, quite frankly . . . We cannot pass judgment on the lawfulness of City Code, or whether its arbitrarily vague or capricious").

   d. The BCA, like the HRC, does not issue written factual findings, even upon request ("We will not be issuing written findings").

   e. In assessing "compatibility," the BCA does not consider the landscaping of other properties or "go into specifics" ("We don't want to talk about additional locations or whatever . . . I don't want to go into specifics . . . There was general discussion about some non-compatible retaining walls . . . We can't respond about why we think any particular wall is appropriate or

inappropriate. That issue is for the commission . . . We have no way of knowing, because nobody in their right mind keeps a record of this stuff," and "[i]t's not up to this commission . . . to come to a finding of fact as to whether [grass is historic] is a correct statement of fact or not." *See Exhibit 5, BCA Transcript.*

49.     CC Section 3118.09 provides that the City's Board of Commission Appeals' decision "is final and appealable" only to "the Environmental Division of the Franklin County Municipal Court."

50.     Plaintiff next "appealed" to the City's "Environmental Court," challenging the City's regulations and their application to them, as required by the City's Code.

51.     In moving to dismiss Plaintiff's constitutional challenge in the Environmental Court, the City insisted that (1) a citizen fails to exhaust his administrative remedies when appealing to the municipal court because he should have appealed to the Court of Common Pleas instead; (2) "The environmental division lacks subject matter jurisdiction to hear" actions "challenging the constitutionality of municipal zoning ordinances;" (3) state law provides that a municipal court may only "enforce" local regulations (insisting that "the Division's jurisdiction is limited to original actions to enforce, not to challenge, the constitutionality of local zoning ordinances," and explaining that "Plaintiff seeks to prevent the enforcement of the ordinance, not to prevent its violation…"); (4) the Environmental Division may not enjoin municipal zoning ordinances; (5) its own ordinance providing for judicial review of its Historic Resource Commission decisions is unconstitutional ("But a municipal ordinance, even one adopted pursuant to a Charter City's constitutional home-rule authority, is incapable of expanding the subject matter jurisdiction of a municipal court;" and (6) any discovery would impose an "undue burden or expense" upon the City and that the Environmental Court forum "does not allow for additional evidence."

52.     In dismissing Mr. Stevens' appeal and/or constitutional challenges, the Environmental Court concurred with the City's arguments that it maintained no authority to consider the constitutionality of Columbus zoning ordinances, whether facially or as applied.

53.     The Court held its decision until November 5, 2019, the date of a contested election for the ruling judge.

54.     Subsequent to the conclusion of his appeals, Code Enforcement Officer Timothy Noll indicated to Plaintiff that he had "suspended" the Notice of Violation "till all the court stuff was finished," but that Mr. Stevens would now face imminent penalties, including $100 per day fines. *See Exhibit 2.*

## JURISDICTION AND VENUE

55.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and permanent injunctive relief and damages; and under 42 U.S.C. § 1988, to award attorneys fees.

56.     Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.8, as (i) the Defendants are situated within this judicial district and division; and (ii) all of the claims asserted by Plaintiff arose within this judicial district and division.

57.     This Court maintains supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367.

58.     This Court maintains the authority to certify "unsettled questions of Ohio law" to the Ohio Supreme Court. See *Ohioans Against Corp. Bailouts, LLC v. LaRose,* No. 2:19-CV-4466, 2019 WL 5457002, at 10 (S.D. Ohio Oct. 23, 2019)("Pursuant to Rule 9.01 of the Rules of Practice of the Ohio Supreme Court, a federal court may certify questions of law to the Ohio Supreme Court when "there is a question of Ohio law

that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court").

59.     If in doubt as to Plaintiffs' state-based claims, this Court should so certify queries regarding the Ohio Constitution's guarantees of private property rights as against vagueness, over-delegation, burden-shifting, and equal protection.

## DECLARATORY JUDGMENT AND INJUNCTION

60.      Plaintiffs hereby incorporates by reference the allegations in the foregoing paragraphs as if set forth fully herein.

61.     In order to prevent violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to FED. R. CIV. P. 57, declaring unconstitutional the Defendants' policies and practices challenged herein.

62.     Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue preliminary and permanent injunctions prohibiting the Defendants from enforcing their restrictions on Plaintiffs' Equal Protection, Due Process, Private Property, and other rights to the extent they are unconstitutional, in order to prevent the imminent violation of Plaintiffs' constitutional rights.

63.     Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs right to maintain and control their private property, obtain fair notice regarding the limits of their freedom to maintain and control their property, and exercise property rights without excessive penalties.

64.     In addition, Plaintiffs maintain concrete plans to improve and therefore "alter" their yard and garden and other portions of his yard in the future, including through planting new trees and plants.  Accordingly, Plaintiffs are entitled to declaratory and injunctive relief such that they need not face prosecution or fines for failing to obtain a permit for such improvements.

**COUNT I**
**VIOLATION OF RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION and SECTIONS 1, 16, and 19 of ARTICLE I OF THE OHIO CONSTITUTION**
**(42 U.S.C. § 1983)**

65.    Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

### *The City's Landscape Compatibility Mandates are Impermissibly Vague*

66.    If the City's Landscaping Compatibility Mandate cannot be construed in favor of Plaintiffs, then it must be found to be unconstitutionally vague.

67.    The void-for-vagueness doctrine not only ensures that laws provide "fair warning" of proscribed conduct, but it also protects citizens against the impermissible delegation of basic policy matters "for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

68.    Without "clear standards guiding the discretion of public officials" with enforcement authority, there is a risk that those officials will "administer the policy based on impermissible factors."

69.    Because private property rights are "fundamental rights" in Ohio, when government policies infringing upon those rights are challenged, courts applying the Ohio Constitution must apply heightened scrutiny to the challenged policy.

70.    In this case, the City applied CC 3116.04, CC 3116.09, CC 3116.13(A) and/or 3116.11(2) to conclude that Mr. Stevens is prohibited from either (1) removing or altering the grass, mud, and dirt in his yard; (2) planting a garden, whether with or without mulch and short retaining walls that prevent erosion; (3) maintain landscaping that the City deems "inappropriate" or "incompatible."

71.    The CC 3116.13(A) requirement that "Landscaping . . . and similar improvements should be *compatible* to each other and to the subject building or structure as well as to adjacent contributing

properties, open spaces and the overall environment" is impermissibly vague, both on its face, and as applied here.

72.    The CC 3116.09(B)(1) and CC 3116.11(2) requirement of "appropriateness" is impermissibly vague, both on its face, and as applied here, and that standard is not saved through reference to what is "distinguishing" or "distinctive."

73.    More specifically, the foregoing standards each lack definition and criteria.

74.    Each of the foregoing standards is standardless.

75.    Each of the foregoing standards fails to supply enforcement authorities with sufficient clarity as to how to consistently enforce the City's regulations without arbitrariness.

76.    Each of the foregoing standards fails to permit meaningful judicial review over the City's orders.

77.    Each of the foregoing standards fails to supply homeowners with sufficient notice as to when governmental permission is required and/or when an exterior alteration should be approved.

78.    Each of the foregoing standards fails to apprise a prospective or potential homebuyer that he or she will be unable to alter grass, dirt, or mud from his or her yard once purchasing a home within a historic district.

79.    Mr. Stevens was unaware that he would be prohibited from altering grass, mud, or dirt prior to purchasing his home.

80.    The vagueness of the City's foregoing standards is further accentuated by the City's inability to identify with precision the time period in history that controls, or what is "distinctive," "distinguishing," "appropriate," or "compatible."

81.    The vagueness of the City's foregoing standards is accentuated by the reality that many homes within the Bryden Road Historic District feature diverse landscaping, gardens, terraced gardens, and/or retaining walls in addition to or in place of solely sloping grass.

### *The City delegates enforcement of vague standards without an intelligible principle.*

82.     The vagueness concerns raised by the City's foregoing standards are aggravated by the City's appointment of untrained volunteers, self-interested neighbors, self-interested professionals, and other unremovable individuals lacking neutrality, to enforce the standardless standards.

83.     CC 3316.04, CC 3116.09, CC 3316.11(2), and CC 3116.13(A) provide impermissibly broad, unintelligible, and vague enforcement criteria and therefor vest impermissible discretion in those who volunteer to enforce the regulations, particularly given the severe criminal and economic penalties imposed upon those who are regulated.

84.     Pursuant to the City's historical regulations, a City of Columbus resident can be imprisoned for up to 60 days depending on whether another property owner views his or her yard as "compatible" with the yards of others.

85.     "Without sufficient limitations, the delegation of authority can be deemed void for vagueness as allowing *ad hoc* decisions or giving unfettered discretion." *Biener v. Calio*, 361 F.3d 206, 215-17 (3rd Cir. 2004).

86.     "A delegation of legislative authority offends due process when it is made to an unaccountable group of individuals and is unaccompanied by 'discernible standards,' such that the delegatee's action cannot be 'measured for its fidelity to the legislative will.'" *Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, No. 2:14-CV-2207, 2016 WL 1165355, at 24-25 (S.D. Ohio Mar. 25, 2016), citing *Eastlake*, 426 U.S. at 675, 96 S.Ct. 2358; see also *McGautha v. California,* 402 U.S. 183, 272 n. 22, (1971) (Brennan, J., dissenting); *Eubank v. City of Richmond,* 226 U.S. 137 (1912) (setting of property line by adjacent owners); *Embree v. Kansas City & Liberty Blvd. Road Dist.,* 240 U.S. 242 (1916) (determination of boundary for road district by petition of landowners); *Browning v. Hooper,* 269 U.S. 396 (1926) (same as *Embree* ); *Seattle Title Trust Co. v. Roberge,* 278 U.S. 116 (1928) (zoning variance only by consent of adjacent owners); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600 (1974) (writ of sequestration granted upon application of vendor); *cf. Carter v.*

*Carter Coal Co.,* 298 U.S. 238 (1936) (Fifth Amendment due process clause limits ability of federal government to delegate to coal producers the power to fix wages and hours).

87.     When "a delegation of authority to a Comprehensive Plan Commission is unaccompanied by discernible standards," "[s]uch a standardless delegation of legislative power to five private citizens, each of whom directly represent the interests of an area homeowners' associations, plainly violates due process of law." *Ctr. for Powell Crossing, LLC,* supra.,[1] citing *Eubank*, 226 U.S. at 143–44, 33 S.Ct. 76; *Roberge*, 278 U.S. at 121–22, 49 S.Ct. 50; *Dep't of Transp. v. Ass'n of Am. Railroads*, 135 S.Ct. 1225, 1234, 1237–38 (2015); *Carter v. Carter Coal Co.,* 298 U.S. 238, 311 (1936)); *Santa Fe Nat'l Tobacco Co. v. Judge*, 963 F.Supp. 437, 441 (M.D.Pa.1997); *Suss v. Am. Soc'y for Prevention of Cruelty to Animals*, 823 F.Supp. 181, 188 (S.D.N.Y.1993) ("For an interested party to make decisions utilizing governmental authority is anathema to due process.").

88.     Here, the City's already-vague standards for issuing permits and/or "certificates of appropriateness" are made further impermissible because the City has delegated their enforcement to politically-unaccountable citizens who are appointed on the basis of a potential conflict of interest and cannot be removed.

89.     In delegating the power to determine what is "compatible," "appropriate," "distinctive," or "distinguishing," the City has delegated away the power to control the private property rights of others without tethering enforcement to any intelligible standards and criteria.

90.     The City's delegation, both on its own and in combination with the vagueness of the standard regulating Plaintiff's conduct, has violated, continues to violate, and will further violate Plaintiffs' Due Process rights.

---

[1]     Judge Graham elaborated on the insufficiency of the standards accompanying the delegation: "The Charter Amendment sets only the vaguest of parameters for the Commission's fact-finding—that the findings regard 'the current state of the Powell community's character and identity in light of current socioeconomic conditions.' In similar fashion, the Amendment broadly charges the Commission to create a comprehensive plan that serves the 'needs and desires' of Powell residents, preserves the 'natural, cultural, and visual elements' of Powell and balances 'residential and non-residential land use.' These are not specific standards by which the Commission must act, but rather are sweeping areas of concern for which the Amendment leaves the Commission with full discretion to formulate policy, with the lone mandate that high-density housing not be allowed in the Downtown Business District."

91.    The City's delegation of these vague standards to non-governmental actors with nearby property interests both amplifies the Landscape Compatibility Mandate's impermissible vagueness and violates the private nondelegation doctrine.

***The City has impermissibly shifted the burden to homeowner to prove compliance with vague standards***

92.    Harm caused by the Landscaping Compatibility Mandate's vagueness is exacerbated by the City's imposition of the burden of proof on the homeowner *to prove compliance with these vague standards* and overcome a presumption *against* the free use of private property.

93.    Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner.

94.    Restrictions on the use of real property by ordinance, resolution or statute must be strictly construed.

95.    To avoid unconstitutionality, the City's Landscaping Compatibility Mandate must be construed in favor of Plaintiffs.

96.    Construing Plaintiffs' landscaping as requiring a permit, incompatible, or inappropriate is inconsistent with the axiom that such limits must be narrowly construed in favor of private property rights.

97.    Pursuant to the City's vague standards, a homeowner, once having landscaped or gardened, is presumed liable for prosecution and fines *unless* able to carry the burden of proving to volunteers that his landscaping is (1) not a modification of a "distinctive" or "distinguishing" characteristic of his property; and (2) sufficiently "appropriate" and "compatible."

98.    There is no requirement that the City provide *any evidence* to justify a conclusion that the landscaping is an affront to historic preservation or otherwise "incompatible" or "inappropriate."

99.    "Burden-shifting can be a problem of constitutional dimension in the civil context."  *Johnson v. Morales*, 946 F.3d 911, 916–40 (6th Cir. 2020).

100.    In *Speiser v. Randall*, 357 U.S. 513, 525-26 (1958), the Supreme Court invalidated a California procedure under which *taxpayer*s had the burden of demonstrating that they were *not* individuals who advocated the overthrow of the government in order to qualify for tax exemptions. See also *Western & A.R.R. v. Henderson,* 279 U.S. at 642 (1929)("[a] statute creating a presumption that is arbitrary, *or* that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property"); *Minski v. U.S.* 131 F.3d 614, 617 (6th Cir., 1942)("[t]he guaranty of the due process clause of the Fifth Amendment is, that a law shall not be unreasonable, arbitrary or capricious, and we think that the presumptive evidence clauses of the act here involved must fall before the constitutional inhibition").

101.    The City's enforcement agents issue citations *presuming* that homeowners' landscaping fails to preserve history and is "incompatible" and "inappropriate," thus immediately threatening to prosecute and fine homeowners who have made any exterior alteration to their homes *unless* that homeowner can appear at a hearing and carry the burden of securing concurrence that his or her new landscaping is "compatible."

102.    Forcing the homeowner to prove compliance with such vague standards to avoid prosecution and fines stacks the deck against the constitutionally-guaranteed free use of property.

103.    The City's "Code Enforcement Officer" Tim Noll issued a "Columbus City Code Violation Notice" to Mr. Stevens that presumed guilt.

104.    The City's Code Enforcement Officer conclusively *presumed* that Mr. Stevens violated the law, positing that "[a]ny exterior change or alteration requires a certificate of appropriateness from the Bryden Historic District," ordering that "you are hereby given notice to correct the alleged violations . . . within 30 calendars days."

105.    The City's Code Enforcement Officer's Notice becomes an order when an appeal of that Notice is not taken or is taken but is unsuccessful: "failure to comply with this notice is a Misdemeanor of the Third Degree and may be punishable by . . . sixty days imprisonment," in the absence of a successful "appeal." *Id.*

16

106.    Pursuant to CC 3116.27(E), "Any notice served shall automatically become an order if a written petition for a hearing before the board of commission appeals is not filed in the historic preservation office ten calendar days after such notice is served."

107.    CC 3116.06 requires the homeowner to "apply" to exercise these rights before exercising them.

108.    CC 3117.07 mandates that in addition to "applying," "certain supplemental materials regarding architectural compatibility shall be required."

109.    CMC 3117.08 dictates that "for any application, the applicant bears the burden" to prove "compelling circumstances" in favor of why that homeowner should be free to garden or landscape his or her yard.

110.    If the homeowner fails to carry the aforementioned burdens, the enforcement agent's decision to impose a "Violation Notice" becomes and "order" resulting in fines and criminal penalties.  See C.C. 3116.27(E).

111.    Shifting of the burden is particularly impermissible in Ohio when property rights are at stake, much less when vague power to curtail those rights has been delegated.

112.    The Ohio Supreme Court has expressed that Due Process requires all inferences to be drawn in favor of *the Ohio landowner.*

113.     The Ohio Constitution provides homeowners greater protection from vague laws that curtail their property rights, particularly when those vague laws delegate enforcement to politically-unaccountable persons and presume against the free use of private property.

114.    The City's requirements that homeowners prove "compatibility" and "appropriateness" to its administrative commission of nearby landowners, with respect to all potential or existing landscaping, fails to provide due process on its face and in application to Plaintiffs' landscaping.

115.     The City's placement of the burden on Plaintiffs and others to prove compliance with vague standards to unaccountable delegees threatens serious imminent harm to Plaintiffs and others.

## COUNT II

**VIOLATION OF RIGHT TO BE FROM ARBITRARY AND UNEQUAL TREATMENT WITH RESPECT TO PRIVATE PROPERTY RIGHTS UNDER SECTIONS 1, 2, 16, 19, and 20 OF ARTICLE I OF THE OHIO CONSTITUTION**

116.    Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

117.    "The Ohio Constitution may be interpreted without adherence or deference to federal court decision regarding the United States Constitution, which provides a floor, not a ceiling, for individual rights enjoyed by state citizens."[2]

118.    Article I, Section 2 of the Ohio Constitution provides that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *."

119.    In *State v. Mole*, the Ohio Supreme Court indicated that the Ohio Constitution's equal protection guarantees can be applied to provide greater protection than their federal counterparts.  *State v. Mole*, 2016-Ohio-5124, ¶¶ 14, citing *Arnold v. Cleveland,* 67 Ohio St.3d 35, 42 (1993).

120.    Section 1, Article 1 of the Ohio Constitution provides the following:  "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

121.    Section 19, Article I states "Private property shall ever be held inviolate, but subservient to the public welfare."

122.     "Ohio has always considered the right of property to be a *fundamental right*.  There can be no doubt that the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces."[3]

123.    In Ohio, these "venerable rights associated with property" are not confined to the mere ownership of property.  Rather, the Ohio Supreme Court recently acknowledged that "[t]he rights related to property, i.e., to *acquire, use, enjoy,* and dispose of property, are among the most revered in our law and traditions."[4]

---

[2]        *PruneYard Shopping Ctr. v. Robbins* (1980), 447 U.S. 74; *State v. Brown* (1992), 63 Ohio St.3d 349.
[3]        *Norwood v. Horney* (2006), 110 Ohio St.3d 353, at 361-62 (internal citations omitted).

124. The City's enforcement of the CC 3116.13(A) requirement that "Landscaping . . . and similar improvements should be compatible to each other and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment" is impermissibly arbitrary and unequal, both on its face, and as applied here.

125. The City's enforcement of CC 3116.11(2) requirement that landscaping be "appropriate" is impermissibly arbitrary and unequal, both on their face, and as applied here.

126. The City's enforcement of the CC 3116.04 requirement that all exterior alterations of a homeowner's yard are subject to civil, criminal, and equitable punishment in the absence of a "Certificate of Appropriateness," which can only be obtained by proving "compatibility" and "appropriateness," is impermissibly arbitrary and unequal, both on their face, and as applied here.

127. The foregoing regulations fail to substantially or narrowly advance the City's legitimate interest in historic preservation.

128. The arbitrariness of the foregoing regulations is accentuated here, where numerous lawns neighboring Plaintiffs' lawn have been altered in a manner divergent from the City's purported interests.

129. Landscaping alterations made prior to 1989 are exempt from the City's historical district prohibitions because they are "grandfathered in."

130. In addition to exemptions for all alterations prior to 1989, homeowners may make the exact same garden improvements that Plaintiffs made without fear of prosecution if the City views the economics of the project in the homeowner's favor.

131. In addition, the exemptions list above, the landscaping and appropriateness requirements do not apply with uniformity beyond the City's *ad hoc* historic districts, irrespective of the governmental interest in historic preservation.

132. The vast number of exemptions from the City's regulations undermine any claim that Plaintiffs can be prosecuted for failing to abide by the same regulations.

---

[4] *Id.*

133.     While the City maintains that Plaintiffs must maintain grass, mud, and dirt to comply with the City's view that Bryden Road should consist of "a park-like setting with a continuous green lawn," in reality, Bryden Road historically consisted of "family operated farms" and a "canopy of elms."  See *History of Olde Towne East,* available online at *http://oldetowneeast.org/area-history/*, and *Bryden Road Historic District*, available online *https://www.historicalmarkerproject.com/markers/HMB84_bryden-road-historic-district_Columbus-OH.html.*

134.     The Ohio Constitution is more protective of private property rights than its federal counterpart, the Ohio Supreme Court insists upon more exacting Equal Protection analysis, and Ohio precedents demand that state courts invalidate regulations that purport to *preserve history* but instead target grass, mud, dirt, and lawns of an unknown age in an uneven and arbitrary fashion.

135.     The Gardening Prohibition is not narrowly tailored and is impermissibly arbitrary: through the limit the City claims to be attempting to effectuate the governmental interest in preserving history, but it does so *by targeting features without proven historical significance*, and mandating conformity, compatibility with current conditions, subjective appropriateness are untethered from historic preservation, and gentrification.

136.     Both prohibiting gardens and mandating the maintenance of previously-existing eroding grass, mud, or dirt fail to substantially advance the City's governmental interests in legitimate historical preservation.

137.     The City may not exercise full dominion and control over features of private property that lack historical significance under the guise of preserving history.

138.     The City's foregoing regulations threaten to impermissibly deprive Plaintiffs of liberty and property.

### COUNT III
### VIOLATION OF RIGHT TO BE FREE FROM EXCESSIVE FINES UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

139.     Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

140. The Excessive Fines Clause thus "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"[5]

141. Where a civil fine levied by the government is designed to be *at least partially* punitive, it is subject to the excessive fine clause.[6]

142. While this Amendment usually applies to criminal fines, it also reaches those civil fines designed at least in part to punish.[7]

143. If a civil fine is subject to the Excessive Fines Clause, courts must examine the proportionality between the fine and the gravity of the associated offense in order to determine whether it is constitutionally excessive.[8]

144. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."[9]

145. A punitive forfeiture violates the Excessive Fines Clause "if it is grossly disproportional to the gravity of a defendant's offense."[10]

146. "Excessive" means surpassing the usual, the proper, or a normal measure of proportion.[11]

147. Even a small fine can be punitive. In *Wenhoff,* the court held that a $16 per month late payment penalty was "clearly meant to punish," subjecting it to the Excessive Fines Clause.[12]

---

[5]     *Austin v. United States,* 509 U.S. 602, 609-610 (1993) (emphasis deleted).

[6]     *Austin v. United States*, 509 U.S. 602 (1993) ("In considering [whether the excessive fine clause applies], we are mindful of the fact that sanctions frequently serve more than one purpose.  We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause.").

[7]     *See Austin,* 509 U.S. at 610, 113 S.Ct. 2801; *Korangy v. U.S. F.D.A.,* 498 F.3d 272, 277 (4th Cir.2007); *Thomas v. Commissioner,* 62 F.3d 97, 99 (4th Cir.1995).

[8]     *See Bajakajian,* 524 U.S. at 333-34.

[9]     *U.S. v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028.

[10]     Id.

[11]     Id., citing See 1 N. Webster, American Dictionary of the English Language (1828) (defining excessive as "beyond the common measure or proportion"); S. Johnson, A Dictionary of the English Language 680 (4th ed. 1773) ("[b]eyond the common proportion").

[12]     *Wemhoff*, 591 F.Supp, at 809.

148.    Federal courts have applied the Excessive Fines Clause to state and local impositions, and the Supreme Court incorporated it against the states in 2019. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 774 F. App'x 959, 967 (6th Cir. 2019)("the Eighth Amendment's protections against excessive fines are equally applicable against state governments as against the federal government. Additionally, in the federal constitutional regime, "[t]he Eighth Amendment protects against excessive civil fines"), citing *Timbs v. Indiana*, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019)("Protection against excessive fines has been a constant shield throughout Anglo-American history for good reason: Such fines undermine other liberties.").

149.    The Excessive Fines Clause is particularly animated by a concern regarding "the use of fines to coerce involuntary labor." *Timbs v. Indiana,* 139 S. Ct. 682, 689 (2019).

150.    The City's policy of imposing $100 per day fines is inherently excessive and disproportionate, bearing no relationship to the gravity of the offense, when applied to those who either (1) landscape or garden with government approval; or (2) maintain "incompatible" landscaping.

151.    The City's policy of imposing $100 per day fines results in a taking and an unconstitutional condition on ownership of private property.

152.    The City's policy of imposing $100 per day fines maintains the impermissible intent or effect of coercing involuntary labor, forcing homeowners like Plaintiffs to undertake the burdens of maintaining or creating "compatible" landscaping which the City itself should undertake to effectuate its governmental interests.

153.    The City continues to threaten Plaintiffs with $100 per day fines for maintaining "incompatible" or "inappropriate" landscaping.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and that this Court:

(1)       Declare that City of Columbus Codified Ordinance Sections 3316.04, 3316.09, 3316.11(2), and 3316.13(A) are unconstitutional on their face, unconstitutional as applied by Defendants, and/or

unconstitutional as applied to Plaintiffs, insofar as they apply to the alterations and maintenance of gardens and other landscaping;

(2)      Issue a preliminary and permanent injunction prohibiting Defendants from enforcing City of Columbus Codified Ordinance Sections 3316.04, 3316.09, 3316.11(2), and 3316.13(A) against Plaintiffs or otherwise, insofar as those sections regulate landscaping;

(3)      Issue a preliminary and permanent injunction prohibiting Defendants from enforcing or relying on City of Columbus Codified Ordinance Sections 3316.04, 3316.11(2), and 3316.13(A) so as to prosecute, fine, imprison, or otherwise punish Plaintiffs and others, insofar as those sections regulate landscaping;

(4)      If deemed necessary to resolve the case, certify novel issues of state constitutional law articulated in this Complaint to the Ohio Supreme Court for clarification;

(5)      Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiffs their costs, damages, and expenses incurred in bringing this action, including their reasonable attorneys' fees;

*and*

(6)      Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

*/s/ Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
122 E. Main Street
Columbus, Ohio 43215
Tel: (614) 340-9817
*MThompson@OhioConstitution.org*
*Counsel of Record*

Sheldon Berns (0000140)
Majeed Makhlouf (0073853)
Berns, Ockner & Greenberger, LLC
3733 Park East Drive, Suite 200
Beachwood, Ohio 44122
Tel: (216) 831-8838, Ext. 205
Fax: (216) 464-4489
*SBerns@BernsOckner.com*
*MMakhlouf@BernsOckner.com*