UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ANDREW H. STEVENS,** *et al.*, | Case No. 2:20-cv-1230 |
| **Plaintiffs,** | Judge Marbley |
| -vs- | Magistrate Deavers |
| **CITY OF COLUMBUS, OHIO,** *et al.*, | |
| **Defendants.** | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Nothing within the Defendants' April 17, 2020 Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction alters the reality that Plaintiffs remain likely to prevail on the merits of their state and federal vagueness, equal protection, and due process claims.

To the contrary, the City's own evidence displays that even the City itself, much less an ordinary citizen, in attempting to decipher and apply the City's "standards," cannot articulate (1) *when* a land use permit ("certificate of appropriateness") is required; (2) *the criteria* governing whether that permit must be issued; or (3) the "history" it claims it is attempting to preserve while regulating Columbus homeowners. Further, the City makes no attempt to justify placing the burden on homeowners to prove compliance with these vague standards, or prioritizing "compatibility" with current surroundings rather than "history" to preserve history.

Ultimately, the City's vague laws are about more than just the garden at the Stevens residence: The City concedes that sixty days imprisonment is the punishment when a local homeowner alters his or her own landscaping without obtaining a government permit. *Defendants' Resp. to Int. 35.* Consequently, obscuring when a Columbus homeowner must apply for a permit and obscuring the standards that homeowners' own landscaping must meet results in the incarceration of otherwise-innocent people. Meanwhile, requiring a homeowner to *always* apply for a permit before improving his or her landscaping and *clamping down* on

1

property uses that inflict no harm and affront no *actual* history violates the Ohio Constitution's strict substantive protections of private property rights.

### I. Background

The City of Columbus, by characterizing *everything visible* to be an "architectural feature," prophylactically forbids even the most menial alteration of one's yard, garden, or landscaping, unless an untrained board of volunteering nearby-property-owners who cannot be removed, supplied with nothing more than vague and broad standards, approves that alteration. See CC Section 3116.04 ("no person shall construct, reconstruct, alter, change the exterior color of or demolish any listed property or architectural feature thereof or any structure or architectural feature now or hereafter in a district or make site improvements thereon without first applying for a certificate of appropriateness therefor and obtaining either such certificate of appropriateness or a clearance"). And because the standards governing the City's citizens' decision-making are unfathomably broad and unclear, no person of ordinary intelligence can predict what is subject to its review or what should be approved.

More specifically, the capricious neighbors comprising the HRC apparently apply two standards, if private property of has been altered or is to be altered within a historic district: (1) whether the alteration is "compatible" to (a) other improvements; (b) the home itself; (c) "adjacent contributing properties"; (d) "open spaces;" and (e) "the overall environment;" and (2) whether the alteration is "appropriate" to the same factors. See CC Section 3116.09; 3116.10(A); 3116.11; CC Section 3116.13. None of the foregoing terms are defined, with the exception of "architectural feature." And *that* term is tautologically defined in a manner that subjects all visible private property to government "compatibility" review: an "architectural feature" is identified in CMC Section 3116.011 as "the architectural treatment and general arrangement of such portion of: (1) [t]he exterior of a property as is designed to be exposed to public view."

The foregoing regulations subject homeowners that the City deems noncompliant to civil penalties up to $100 per day and criminal penalties up to a third degree misdemeanor carrying up to 60 days in jail. Doc. 1, PageID 55. Notice of Violation; see also CC 3116.26 (articulating civil penalties and specific

performance); and 3117.27 (enforcing penalties articulated in Notices of Violation). On or about June 25, 2018, City of Columbus "Code Enforcement Officer" Tim Noll issued a "Columbus City Code Violation Notice" to Mr. Stevens, citing as a "violation" that "a retaining brick wall has been erected in the front yard without first obtaining the required certificate of appropriateness." *Id.* The Notice of Violation further opined that Mr. Stevens violated the law because "[a]ny exterior change or alteration requires a certificate of appropriateness from the Bryden Historic District." *Id.* Pursuant to CC 3116.27(E), "Any notice served shall automatically become an order if a written petition for a hearing before the board of commission appeals is not filed in the historic preservation office ten calendar days after such notice is served."

## II. Law and Analysis

The City's Memorandum in Opposition fails to provide substantive law, facts, or reasoning to defend that vague standards at issue in this litigation, instead supplying only a sprinkling of cursory conclusions. To be sure, the City does claim "the City's regulations are not unconstitutional . . . and are not arbitrary or vague." Doc. 15, PageID 274. But the City fails to later support this claim with facts, law, or reasoning. See Doc. 15, generally. However, Defendants' Discovery Responses further demonstrate that the City's Landscaping Compatibility Mandate is impermissibly vague.

### A. The City's Landscaping Compatibility Mandate remains impermissibly vague.

"If arbitrary and discriminatory enforcement is to be prevented, <u>laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to police [officers], judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.</u>" *Norwood v. Horney,* 2006-Ohio-3799, at ¶ 83, citing *Grayned v. Rockford*, 408 U.S. 104, 108–109 (1972). In *Norwood,* the Ohio Supreme Court determined the term "deteriorating" to be impermissibly vague. The Court emphasized that "the term appears in the Norwood Code but is not defined," that "it offers so little guidance in application that it is almost barren of any practical meaning," and that the standard invited speculation. *Id.,* at ¶95, 97. The Court thus concluded that "[i]n essence, 'deteriorating area' is a standardless standard. Rather than affording fair notice to the property

owner, the Norwood Code merely recites a host of subjective factors that invite ad hoc and selective enforcement." *Id.,* at ¶ 99.

In accordance with these axions, two courts within this District have recently found land use regulation that delegate broad and vague powers to citizen commissions to impermissibly violate homeowners' rights to Due Process. See *Rice v. Vill. of Johnstown, Ohio,* No. 2:19-CV-504, 2020 WL 588127, at 4-8 (S.D. Ohio Feb. 5, 2020)(insufficient standards over use of private property delegated to Planning and Zoning commission appointed by City Council); *Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, No. 2:14-CV-2207, 2016 WL 1165355, at 24-25 (S.D. Ohio Mar. 25, 2016)(insufficient standards over use of private property delegated to commission appointed by City Charter).

Applying such reasoning, courts within this district have concluded that subjecting property rights to determinations of factors such as suitability, adequacy, compatibility, and consistency are "vague and not discernable standards to ensure due process." *Rice,* supra. at 7-8 ("the Johnstown Ordinance does not prove enough guidance" to serve as "standards to guide the private parties' discretion"), citing *Powell,* supra., at 678 (assailing vague considerations such as "natural, cultural, and visual elements" to be insufficiently "discernable standards" to limit administrative or private parties' discretion).

Ultimately, the City's standards regarding *when* one must apply for a permit prior to altering his or her own yard and *what standard applies* once that homeowner applies for a permit, and then what a homeowner must prove to prevail, remain impermissibly vague. And that vagueness remains aggravated by the outsourcing of the standardless standards to untrained and unchecked non-governmental actors.

   i. ***The City remains unable to clarify when a permit is required or what standard applies to determine "appropriateness" or "compatibility."***

In addition to the landscape-specific "compatibility" mandate articulated in CC Section 3116.13 above, CC Section 3116.11 indicates, in pertinent part, as follows: "The following standards shall apply to evaluation of the appropriateness of a proposed alteration: * * * (2) The distinguishing characteristics of the property shall not be destroyed. The removal or alteration of any historic material or distinctive

architectural feature shall be avoided whenever possible * * *." Thus, the City prohibits "destruction" of the "distinguishing characteristics of the property," or the "alteration" of "any historic material or distinctive architectural feature whenever possible."

Criminalizing as "inappropriate" the alteration of "distinguishing" or "distinctive" features or "historic material" is impermissibly vague. Likewise, mandating that landscaping be "compatible" remains impermissibly vague.

*First,* the City is both unable and unwilling to define any of the operative "standards" contained in the foregoing "compatibility" and "appropriateness" mandates. *See Defendants' Resp. to Int. 4, 5, 6, 10, 11, 12, 13, 14, 15, 36* (failing and refusing to provide any definition or standard whatsoever for the terms "distinguishing," "historic," or "distinctive," much less one that could justify how those term could be applied to a homeowner's *yard of grass*); see also *Defendants' Resp. to Int. 33* (the City cannot identify whether Plaintiffs' front yard is or was "distinguishing," "distinctive," or "historic"); *Defendants' Resp. to Int. 16, 17* (City cannot define "compatible" or that standard's underlying criteria); *Defendants' Resp. to Int. 29* (the City cannot explain why Plaintiffs' garden is not "compatible").

Vagueness is further displayed as the City claims that it is impossible for a homeowner to determine whether or not a desired alteration of his or her yard will be deemed "compatible" without government approval, due to the vast number of "preexisting nonhistoric conditions" in any given neighborhood." *Defendants' Resp. to Int. 37.* Likewise as the City is unable to identify the type of evidence a homeowner must produce and submit to prove that a desired or already-undertaken alteration of one's own yard is "compatible." *Defendants' Resp. to Int. 37.*

Given this absence of clarity, flippantly advising Columbus homeowners to "go read a dictionary" is impermissibly subjective, especially when most dictionaries do not define those terms in any manner that would cause a person of ordinary intelligence to conclude that they could possibly apply to an otherwise-unremarkable urban lawn. In *Norwood,* the Ohio Supreme Court, in determining the term "deteriorating" to be impermissibly vague, emphasized that "the term appears in the Norwood Code but is not defined." *Id.,* at

5

¶95, 97; see also *Viviano v. Sandusky* 2013-Ohio-2813, at ¶ 18-20. ("an ordinance cannot leave what constitutes a violation open to interpretation by relying on the enforcing body to use 'common sense.' Such an assessment is 'exactly the kind of unfettered discretion that the vagueness doctrine prohibits.'").

*Second,* when asked to clarify the "distinctive" architectural feature that Plaintiffs altered, the City is unable to do so, instead simply repeating that Mr. Stevens included a small retaining wall in his garden. *See Defendants' Resp. to Int. 24* (failing and refusing to identify the "distinguishing" characteristic, "historic material," or "distinctive" architectural feature that Plaintiffs altered). To concede that the feature altered was merely grass would defeat any contention that (1) the City's standards have meaning; or (2) the City's standards are sufficiently narrowly tailored to historic preservation or any other governmental interest, i.e. the City has criminalized *any* alteration of *any* feature of a Columbus homeowners' property, whether or not that feature is "distinguishing," "historic," and "distinctive."

*Third,* the reality that these standards are *standardless* and impermissibly vague is highlighted by City's full endorsement of the enforcement policies of Defendant Tim Noll. Mr. Noll enforces the City's prohibitions such that "any exterior change or alteration requires a certificate of appropriateness from the Bryden Historic District." Doc. 1, PageID 55. While this would seem to depart from the standard that features mut be "distinguishing," "historic," or "distinctive" to warrant subjection to "appropriateness" analysis or "compatibility" review, the City has identified Mr. Noll as "the person with the greatest knowledge related to the Landscaping Compatibility Mandate and how it is enforced," and added that Mr. Noll "at all times accurately enforced Columbus City Code Chapter 3101, et seq. to Plaintiffs' property." *See Defendants' Resp. to Int. 1, 2.* Along the same lines, the City's attorneys have diverged from Mr. Noll as to when "appropriateness" review is required, claiming for the first time that rather than "any alteration," only "adverse" or "substantial" alterations require a permit. *See Defendants' Resp. to Int. 18.* Simply put, the City does not know when its own ordinances require a permit because those ordinances are impermissibly vague. Thus, as the City enforces its mandates, "distinguishing," "historic," and "distinctive" each mean "any." This is impermissibly vague. And if "any" is truly the standard, it violates the Ohio

6

Constitution's limits on the arbitrariness. *Infa.* At minimum, the code fails to provide *anyone* at the City, even its own attorneys and experts, with sufficient guidance to articulate, much less fairly enforce, its limits.

*Finally*, regulating to preserve compatibility with history, as it existed at the time "during which Plaintiffs' residence and other residences in the neighborhood were built" is an impermissibly vague exercise of governmental power instances such as this, where the City expressly concedes that *it does not know when Plaintiffs' home was built,* and "does not maintain a record of architectural details [or any details at all] for each property." *See Defendants' Resp. to Int. 8, 9, 22.*

In fact, the City cannot explain at all how "prohibiting Plaintiffs' alteration advances historic preservation." *See Defendants' Resp. to Int. 23.* The sole rationale the City can proffer to support the notion that Plaintiffs' alterations are either "inappropriate" or "incompatible" is that "the alterations were done without applying for a certificate of appropriateness." *See Defendants' Resp. to Int. 30, 33, 34.*

Thus, the City has still failed to clarify its "appropriateness" or "compatibility" standards because those standards are not subject to clarity. Meanwhile, the City has adduced considerable evidence that this standard is impermissibly vague. Accordingly, Plaintiffs remain likely to prevail on the merits of their vagueness claim.

### ii. *The City's attempt to justify its delegation only further aggravate the vagueness of its standards.*

The Due Process Clause also limits "the manner and extent" to which authority may be outsourced. See *Biener v. Calio*, 361 F.3d 206, 216 (3d Cir.2004). "A delegation of legislative authority offends due process when it is made to an unaccountable group of individuals and is unaccompanied by 'discernible standards,' such that the delegatee's action cannot be 'measured for its fidelity to the legislative will.'" *Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d. 639, 675-79 (S.D. Ohio 2016).

Here, the evidence now further confirms that enforcement of these vague standards is entirely outsourced to a board of non-governmental individuals to whom the city provides *no training to or oversight over whatsoever*: once appointed, the City's Historic Resource Commission members are free to employ complete subjectivity. *See Defendants' Resp. to Int. 25, 26.* Totally unavailing is the City's claim otherwise

on grounds that Commission members are indeed "pre-trained" because bankers, developers, bankruptcy attorneys, and jewelry store owners can be presumed to know the architectural history of each home and neighborhood in the City from 1880 to the present day (member Gibboney's "expertise" is managing a jewelry store). *Id.* In fact, the City can cite now instance in the past four years of either the City's own Board of Commission Appeals or an independent court overturning a decision of the HRC. *Defendants' Resp. to Int. 42, 43*. Consequently, these untrained non-governmental actors maintain power over the private property rights of their neighbors that is essentially "final." This failure of meaningful review is not surprising, since the City's mandates supply no standard by which a court could review the lawfulness of one of the City's determinations. This outsourcing of governmental power magnifies the City's already-vague enactments, further illustrating that Plaintiffs are likely to succeed on the merits of their claims.

### iii. To the extent that the City mandates government permits for any alteration of landscaping and then reviews the landscaping for "compatibility," and "appropriateness," that mandate violates the Ohio Constitution's substantive guarantees.

Even if the City's vague delegations were held aside, subjecting every exterior alteration of a private home to government review and approval fails to narrowly and substantially advance the City's interest in historic preservation because it (1) requires review and approval of private property alterations *unrelated* to historical preservation; and (2) applies standards imposing, if anything clear, conformity with neighboring properties and subjective preferences rather than standards narrowly targeted toward historic preservation.

In Ohio, a regulation infringing upon private property rights must be "necessary" to *substantially* advance the state's interest and bear a *substantial* relationship to those interests, and cannot be "arbitrary" or "unduly oppressive":

> Before the police power can be exercised to limit an owner's control of private property, it must appear that the interests of the general public require its exercise and <u>the means of restriction must not be unduly oppressive upon individuals</u>. Further, the free use of property guaranteed by the Ohio Constitution can be invaded by an exercise of the police power only "<u>when the restriction thereof bears a substantial relationship</u> to the public health, morals and safety."

*State ex rel. Pizza v. Rezcallah*, 1998-Ohio-313, 84 Ohio St. 3d 116, 131–32 (emphasis added). Distillation of these governing precedents thus reveals that a regulation of property violates the Ohio Constitution's

8

guarantees of Due Process and Equal Protection when it is "arbitrary," "unduly oppressive upon individuals," not "necessary for the public welfare," or fails to *substantially* advance a legitimate interest *through a substantial relationship to it*. See *Direct Plumbing Supply v. City of Dayton*, 138 Ohio St. 540 (1941); *Olds v. Klotz*, 131 Ohio St. 447, 451 (1936); *City of Cincinnati v. Correll*, 141 Ohio St. 535, 539 (1943).

The City claims that its Landscaping Compatibility Mandate exists "to preserve our city's historic buildings and neighborhoods;" and "to preserve the area's historic character." *Guidelines, p. 1*. But new evidence further affirms that the City's Landscaping Compatibility Mandate fails to substantially advance this result in a narrowly tailored manner. The City is unable to cite any means by which the Landscaping Compatibility Mandate advances public health or safety, or is in any way actually necessary. *Defendants' Resp. to Int. 38, 39*. The City overbroadly asserts that every single yard and blade of grass is subject to historic regulations because "A yard is a distinguishing characteristic of any property." *See Defendants' Resp. to Int. 28*. The City cannot explain why so many other properties have been permitted to maintain front yard terracing, gardens, and other features so similar to those of Plaintiffs. *Defendants' Resp. to Int. 33*. And again, the City expressly concedes that *it does not know when* Plaintiffs' home was built, and "does not maintain a record of architectural details [or any details at all] for each property." *See Defendants' Resp. to Int. 8, 9, 22*. In fact, the City cannot explain at all how "prohibiting Plaintiffs' alteration advances historic preservation." *See Defendants' Resp. to Int. 23*. Consequently, there is an insufficiently tailored nexus between the advancement of historic preservation and the City's policies to withstand the Ohio Constitution's heightened scrutiny of the infringement of private property right. For this reason as well, Plaintiffs are likely to succeed on the merits of their claims.

**B. Irreparable harm and harm to third parties.**

*First*, the City claims "there will be no irreparable harm" to Plaintiffs. Doc. 15, PageID 277. Yet the City simultaneously concedes that Plaintiffs are subject to up to sixty days in prison. Courts have also held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights. *See, e.g., Connection Distrib. Co. v. Reno,* 154 F.3d

9

281, 288 (6th Cir.1998). And satisfaction of the first prong of the preliminary injunction standard – demonstrating a strong likelihood of success on the merits – also satisfies the irreparable injury standard. *See Elrod v. Burns*, 427 U.S. 347, 373 (1973) (holding that if a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated).

*Second,* the City maintains the temerity to claim that injunctive relief "would result in harm to the City if other homeowners in the City . . . make changes to their properties without seeking certificates of appropriateness." Doc. 15, PageID 277. The City fails to elaborate. But the City has already conceded that it maintains no support for any proposition that the Landscaping Compatibility Mandate advances historic preservation *at all*, and it fails to provide any basis why the mandate is necessary, whether to advance health or safety or otherwise. *Defendants' Resp. to Int. 38, 39.* At worst, some of the City's landscaping might not be "compatible." In the absence of such concerns, curtailing the employment of vague laws to imprison homeowners is the paramount public interest concern.

### III. Conclusion

This Court should preliminarily enjoin the City of Columbus from imposing criminal and civil penalties upon Plaintiff Andrew Stevens for failure to obtain Historic Resource Commission ("HRC") approval of his minor gardening and landscaping improvements and preliminary enjoin the City from further enforcing the Landscaping Compatibility Mandate (articulated in CC 3116.04, when applied to landscape, and 3116.13), whether as against Mr. Stevens or all similarly-situated homeowners.

Respectfully submitted,

*/s/ Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
122 E. Main Street
Columbus, Ohio 43215
Tel: (614) 340-9817
*MThompson@OhioConstitution.org*

Sheldon Berns (0000140)
Majeed Makhlouf (0073853)
Berns, Ockner & Greenberger, LLC

3733 Park East Drive, Suite 200<br>
Beachwood, Ohio 44122<br>
Tel: (216) 831-8838, Ext. 205<br>
*SBerns@BernsOckner.com*<br>
*MMakhlouf@BernsOckner.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on Defendants, through email to Defendants' Counsel, on **May 11, 2020**

Respectfully submitted,<br>
/s/ Maurice A. Thompson<br>
Maurice A. Thompson (0078548)