**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANDREW H. STEVENS, and** | : | |
| **MELANIE COPENHAVER,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:20-CV-1230** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **CITY OF COLUMBUS, OHIO, and** | : | |
| **TIMOTHY J. NOLL** | : | |
| *In his official capacity as Code Enforcement* | : | |
| *Officer of the City of Columbus, OH* | : | **Magistrate Judge Deavers** |
| | : | |
| **Defendant.** | : | |

<u>**ORDER**</u>

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction ("PI"). (ECF No. 3). On April 8, 2020, Plaintiffs filed a motion to consolidate the hearing on their motion for a preliminary injunction with trial on the merits. (ECF No. 12). On April 17, 2020, Defendants filed a response requesting that this Court deny Plaintiffs' motion for preliminary injunctive relief and for consolidation of the PI hearing with trial on the merits. (ECF No. 15). This Court granted Plaintiffs' motion to consolidate the PI hearing with trial on the merits because the facts of the case were not in dispute and the issues for determination were primarily legal. (ECF No. 24). For the reasons set forth below, this Court **DENIES** Plaintiffs' Motion for injunctive and declaratory relief.

## I.     BACKGROUND

This case relates to the City of Columbus' landscape alteration policies for owners of homes located in the City's historic districts. Plaintiffs, Andrew Stevens and Melanie Copenhaver, purchased a home that is not subject to any restrictive covenants but is located

within the City of Columbus' Bryden Road Historic District. (ECF No. 1 at 3-4; ECF No. 3 at 4).
They renovated the home and the yard, and as part of the renovation process, installed a terraced
garden in the front yard. *Id.*



Plaintiffs' Home at 1734 Bryden Road - August 2018 (Before Landscaping)



Plaintiffs' Home at 1734 Bryden Road - October 2018 (After Landscaping)

The Bryden Road Historic District, where Plaintiffs' home is located, is governed by the
City of Columbus's Planning and Historic Preservation Code ("Historic Preservation Code"),
codified in Title 31 of the City's Code. The City's Historic Preservation code was:

> enacted to preserve and promote the public health, safety and welfare by means of
> regulations and restrictions enacted to encourage the orderly growth and development of
> the city; to provide for adequate light, air, open space and convenience of access; to
> protect against fire and natural hazards; and to maintain and enhance the value of
> buildings, structures and land throughout the city.

Columbus City Code § 3101.01. The Historic Preservation Code requires that property owners in
certain historic districts first obtain certificates of appropriateness (also, "permits") prior to
altering or making significant changes to their property.

In June 2018, Defendant Timothy J. Knoll, a Columbus city code enforcement officer,
issued Stevens a code violation notice for having installed a retaining brick wall in his front yard
without first obtaining a required certificate of appropriateness from the Historic Resource

Commission composed of individuals appointed by the mayor. *Id.* at 5; (ECF No. 15 at 2). Mr. Stevens was directed to comply with the notice within 30 days or face significant fines and punishment of sixty days imprisonment. *Id.* at 5. Mr. Stevens' appeal to keep the "improvements" to his yard were denied by the City of Columbus Historic Resources Commission ("HRC") in December 2018 because the garden was not "'in character with the neighborhood or the house' because it 'was too suburban.'" *Id.* at 6.

After the HRC denied Mr. Stevens' request to keep his "improvements," Stevens appealed this denial to the Board of Commission Appeals in January 2019. (ECF No. 1 at 7). The Board of Commission Appeals ("BCA") denied his appeal in April 2019. *Id*. Mr. Stevens next appealed the BCA's decision to the Environmental Division of the Franklin County Municipal Court. *Id*. at 8. The Municipal Court ultimately dismissed Mr. Stevens' case without prejudice for lack of subject matter jurisdiction since the appeal was in essence a constitutional challenge to the Columbus zoning ordinance for which the Court lacked the jurisdiction to determine the merits of the claim and no facts were alleged regarding improper or unconstitutional acts by the reviewing administrative bodies. (ECF No. 15-1 at 3).

Plaintiffs argue that they launched their appeal in the Municipal Court because City Code §3118.09 provides that the BCA's decision is appealable only to it. (ECF No. 1 at 8). Defendants argue that instead of appealing to the Municipal Court, Mr. Stevens should have appealed the BCA's decision to the Franklin County Court of Common Pleas pursuant to Oh. Rev. C. § 2506.01, since his appeal was "actually a declaratory judgment action challenging the constitutionality of such action" and not merely an "appeal of the decision of an administrative body." (ECF No. 15 at 2).

Mr. Stevens requests that this Court permanently enjoin the City of Columbus from imposing criminal, civil, or other penalties on Plaintiff and other Columbus homeowners if they fail to obtain Historic Resources Commission approval of gardening and landscaping alterations. He argues that this landscaping policy violates his rights under the due process clause of the Fourteenth Amendment since the standards used by the members of the Historic Resources Commission are so broad and vague that "no person of ordinary intelligence can predict what is subject to its review or what should be approved." *Id.* at 5.

## II.     STANDARD OF REVIEW

This Court has granted Plaintiffs' motion to partially consolidate the preliminary injunction hearing with trial on the merits because the facts of this case are not in dispute and the issues in this suit are entirely legal in nature. (ECF No. 24). Accordingly, in determining whether to grant Plaintiffs' requests for declaratory and injunctive relief, this Court will consider the factors that courts consider in determining whether to grant a permanent injunction.

When determining whether to grant a request for a permanent injunction, Courts require a plaintiff to show: "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006). Furthermore, the decision to grant or deny permanent injunctive relief "is an act of equitable discretion by the district court." *Id.* A plaintiff is entitled to a permanent injunction if he or she can establish that he or she "suffered a constitutional violation and will suffer 'continuing irreparable injury' for which there is no adequate remedy at law." *Deja Vu of Nashville, Inc. v. Metro. Gov't*

*of Nashville & Davidson County,* 466 F.3d 391, 394 (6th Cir.2006) (citing *Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 602 (6th Cir.2006)).

### III.    ANALYSIS

### A.  Constitutional Violation

Plaintiffs challenge the Historic Preservation Code both facially and as applied to them arguing that sections of the ordinance are impermissibly vague in violation of the procedural due process guarantees of the United States Constitution and the substantive property rights guaranteed in the Ohio Constitution. (ECF No. 3). Defendants argue that Plaintiffs are unable to demonstrate an irreparable injury because they have not exhausted their administrative remedies and the City's regulations are not unconstitutional either on their face or as applied. (ECF No. 15 at 5).

### 1.  Failure to exhaust administrative remedies

Defendants argue that Plaintiffs' motion should be denied since Stevens failed to exhaust administrative remedies by pursuing an appeal pursuant to Oh. Rev. C. 2506.01 in the Franklin County Court of Common Pleas. (ECF No. 15 at 6). Oh. Rev. Code §2506.01 provides that:

> …every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code.
> (B) The appeal provided in this section is in addition to any other remedy of appeal provided by law.

Oh. Rev. Code §2506.01 (A)-(B)

Defendants argue that Plaintiffs have not exhausted their remedies because they were required to file an appeal pursuant to § 2506.01 of the Oh. Rev. Code. (ECF No. 15 at 6). The Ohio Supreme Court, however, has made clear that individuals challenging existing zoning restrictions may do so either through a §2506 action or a through a declaratory judgment action. *See Driscoll v. Austintown Assocs.*, 42 Ohio St. 2d 263, 270–71, 328 N.E.2d 395, 401 (1975)

5

(noting that Ohio Civil Rule 57 means that "the existence of the R.C. Chapter 2506 remedy does not preclude resort to an action for a declaratory judgment."). In *Driscoll*, the Supreme Court of Ohio clarified that there are substantive differences between a 2506 action and a declaratory judgment action and that while both "seek the same ultimate relief-elimination of an existing zoning regulation which prohibits a proposed use of the property" the similarities end there since a "declaratory judgment action is independent from the administrative proceedings; it is not a review of the final administrative order." *Driscoll v. Austintown Assocs.*, 42 Ohio St. 2d 263, 270-71, 328 N.E.2d 395, 401 (1975).

While the Supreme Court of Ohio does require a plaintiff to exhaust administrative remedies by obtaining a "final decision concerning the application of a zoning regulation to the specific property in question," there is no requirement that a plaintiff first pursue a § 2506 appeal before bringing a declaratory judgment action since they are alternative remedies. *See Karches v. City of Cincinnati*, 38 Ohio St. 3d 12, 15-16, 526 N.E.2d 1350, 1355 (1988). Furthermore, where a plaintiff challenges the constitutionality of a proposed ordinance, a declaratory judgment action, and not a 2506 appeal is the appropriate method of challenging the ordinance. *See Schomaeker v. First Nat. Bank of Ottawa*, 66 Ohio St. 2d 304, 313, 421 N.E.2d 530, 537 (1981) (determining that plaintiff could not pursue declaratory judgment action because plaintiff does not "attack the validity or constitutionality of the Ottawa Zoning Ordinance in any respect, but seeks relief essentially on the basis that the granting of the use variance was against the weight of the evidence and contrary to law.")

Here, Plaintiffs exhausted their administrative remedies by appealing the denial of their request to keep the "improvements" made to their yard to the HRC and the BCA. (ECF No. 15 at 2). Furthermore, because Plaintiffs challenge the constitutionality of the ordinances at issue,

Plaintiffs were not obligated to exhaust their administrative remedies nor bring a § 2506.01 challenge before pursuing a claim for declaratory relief. *See Jones v. Chagrin Falls*, 77 Ohio St. 3d 456, 460, 674 N.E.2d 1388, 1391 (Oh. 1997) (noting that "exhaust[ing] administrative remedies is not a necessary prerequisite to an action challenging the constitutionality of a statute, ordinance, or administrative rule" since "administrative bodies have no authority to interpret the Constitution, requiring litigants to assert constitutional arguments administratively would be a waste of time and effort for all involved.").

With respect to Plaintiffs' claims brought pursuant to federal law, no exhaustion of administrative remedies is required for Section 1983 actions, absent a statute requiring such exhaustion. *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167, 204 L. Ed. 2d 558 (2019) (noting "the settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983.") (internal quotation marks omitted); *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991) (noting "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency.")

Accordingly, Defendants' argument that Plaintiffs were required to exhaust their administrative remedies by filing a § 2506 appeal is without merit.

## 2. Violation of Procedural Due Process Guarantees of the U.S. and Ohio Constitutions

Plaintiffs argue that the landscaping enforcement scheme ("Landscaping Mandate") set out in Columbus City Code § 3116 is unconstitutional on its face and as applied because this scheme is (a) vague; (b) impermissibly delegates legislative authority to private citizens; and (c) shifts the burden to homeowners to prove that their landscaping complies with vague provisions of the Columbus City Code.

To state a claim for a violation of procedural due process, a Plaintiff must allege: "(1) that it had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that it was deprived of that protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford it adequate procedural rights before depriving it of its protected interest." *Golf Vill. N. LLC v. City of Powell, Ohio*, 333 F. Supp. 3d 769, 778 (S.D. Ohio 2018) (citing *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)). A plaintiff must first demonstrate that he possessed a protected property interest before a court will consider whether he was deprived of that interest and whether the government provided appropriate process before (or after) such deprivation occurred. *See Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). The United States Constitution does not create property rights; instead, those rights are created and defined by independent sources such as state law. *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002). State court decisions provide "controlling authority for such determinations." *Id.*

Defendants do not contest that Plaintiffs have a property interest protected by the Due Process Clause but do contest that Plaintiff was deprived of that interest and that the state did not afford adequate procedural rights. (ECF No. 15 at 6-8). Plaintiffs argue that the Landscaping Mandate violates due process because it subjects them to fines and potential imprisonment and in effect "controls their private property with vague standards, the enforcement of which are delegated to untrained private individuals … [who] wield that power arbitrarily such that planting grass, shrubs or vegetables unexpectedly requires government approval and is often disallowed." (ECF No. 3 at 8).

### a.    Vagueness of Landscaping Mandate

Plaintiffs argue the Landscaping Mandate is vague because it requires a homeowner to ensure that any alteration made to the landscaping of the property, no matter how minor, be approved in advance as (1) "compatible to … other [landscaping on the property] and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment" and (2) that the landscaping be "appropriate." (ECF No. 3 at 10). Plaintiffs argue that these are broad and indeterminate standards that do not provide meaningful notice of the conduct proscribed. *Id*. Defendants argue that the Columbus Historic Preservation Code provides discernable standards and that homeowners have notice of those standards. (ECF No. 15).

Void for vagueness doctrine prohibits criminal laws that fail "to give ordinary people fair notice of the conduct it punishes, or [are] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The nature of the statute dictates the standard to be applied, with civil laws that do not implicate the First Amendment "held to a less strict vagueness standard than criminal laws 'because the consequences of imprecision are qualitatively less severe.'" *Buckle Up Festival, LLC v. City of Cincinnati*, 336 F. Supp. 3d 882, 886 (S.D. Ohio 2018) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S. Ct. 1186, 1193, 71 L. Ed. 2d 362 (1982)). Even where a case does not involve the First Amendment, however, "courts may engage in a facial analysis where the enactment imposes criminal sanctions." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999)

To survive a vagueness analysis, the contested statute or regulation must: (1) "give the person of ordinary intelligence a reasonable opportunity know what is prohibited"; (2) "provide explicit standards for those who enforce them" to prevent "arbitrary and discriminatory

enforcement"; and (3) not impinge upon first amendment rights." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *State v. Varsel*, 11 N.E.3d 327, 330 (Ohio Ct. App. 2014). The failure to define a term in a statute or an ordinance does not automatically "render the statute unconstitutionally vague" where "the common meaning of the word provides both adequate notice of the conduct prohibited and of the standards for enforcement." *Belle Maer*, 170 F.3d at 558 (6th Cir. 1999).

Defendants argue that the Historic Preservation Code does not prevent "Plaintiffs from building on, or making any minor alterations to their property" instead, the city "has implemented a permitting process in order to preserve the character of its historic districts." (ECF No. 15 at 6-7). § 3116.04 of Columbus' Planning and Historic Preservation Code provides, in relevant part:

> Except in cases excluded by C.C. 3116.23, no person shall construct, reconstruct, alter, change the exterior color of or demolish any listed property or architectural feature thereof or any structure or architectural feature now or hereafter in a district or make site improvements thereon without first applying for a certificate of appropriateness therefor and obtaining either such certificate of appropriateness or a clearance.

Columbus City Code § 3116.04. Architectural feature is defined in part as the "exterior of a property as is designed to be exposed to public view." Columbus City Code § 3116.011 (A)(1).

The issuance of a certificate of appropriateness is governed by § 3116.09, which provides that the Historic Resources Commission shall issue such a certificate if the:

> alteration, construction, site improvement, or demolition **is appropriate as defined by the architectural standards** in C.C. 3116.11, 3116.12, 3116.13 or 3116.14, respectively, the pertinent typical architectural characteristics and such guidelines as the commission shall have adopted.

Columbus City Code § 3116.09 (B)(1) (emphasis added). Of the four city code sections mentioned in § 3116.09, Section § 3116.13 provides the standards for "site improvements," which includes improvements to landscaping, and states, in relevant part:

(A)  Landscaping, parking, utility or service areas, walkways and similar improvements should be **compatible to each other** and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment.

Columbus City Code § 3116.13(A) (emphasis added). § 3116.11 provides the architectural

guidelines for alterations of architectural features and states:

The following standards shall apply to evaluation of the appropriateness of a proposed alteration:

(1) Every reasonable effort shall be made to use the property for its originally intended purpose or to provide a compatible requiring minimal alteration.

(2) The distinguishing characteristics of the property shall not be destroyed. The removal or alteration of any historic material or distinctive architectural feature shall be avoided whenever possible.

(3) Each property shall be recognized as a product of its own time. Alterations that have no historical basis and which seek to create an earlier appearance shall be discouraged.

(4) Changes which have taken place over the course of time are evidence of the property's history and environment. These changes may have acquired significance in their own right and, if so, this significance shall be respected.

(5) Distinctive stylistic features and examples of craftsmanship that characterize a property shall be treated with sensitivity.

(6) Deteriorated architectural features shall be repaired rather than replaced whenever possible. In the event replacement is necessary, the new material shall match the material being replaced in composition, design, color, texture and other visual qualities. Repair or replacement of missing architectural features shall be based on accurate duplications of features, substantiated by historic, physical or pictorial evidence rather than on conjectural designs or the availability of different architectural elements from other structures.

(7) The gentlest means possible shall be used to clean the property's surface if necessary. Sandblasting and other cleaning methods that will damage the historic building materials are prohibited.

(8) Archaeological resources affected by or adjacent to any alteration shall be protected and preserved.

(9) Contemporary design for alteration to a property shall not be discouraged when such alteration does not destroy significant, historical, architectural or cultural material and its design is compatible with the size, scale, color, material and character of the property, its environment and surrounding contributing properties.

(10) Whenever possible, a new addition or alteration shall be accomplished so that its future removal will not impair the essential form and integrity of the structure.

(11) Exterior cladding of a structure shall be consistent with the original materials used on the property.

(12) In passing upon appropriateness, the commission shall consider, in addition to any other pertinent factor, the architectural characteristics typical of structures in the district or listed property, the historical and architectural value and significance, architectural style, general design, arrangement, texture, material and color of the architectural feature

11

involved and its relation to the architectural features of other contributing properties in the immediate neighborhood.

Columbus City Code § 3116.11.

Plaintiffs argue that the City's Historic Preservation Code is unconstitutionally vague in two ways. First, they argue that the Code's requirement that homeowners obtain a certificate of appropriateness (or "permit") prior to altering an "architectural feature" or making "site improvements" does not give them notice that they are required to obtain a permit prior to doing "minor landscaping, gardening and yard maintenance." (ECF No. 3 at 16). Second, Plaintiffs argue that the standards used by the commission in determining whether to grant a permit for landscaping— whether the improvements are "compatible" or "appropriate"— are vague and subject to arbitrary enforcement.

As to the first vagueness challenge, the City Code does appear to require homeowners in a historic district to first obtain a permit before making significant alterations to their property including alterations to "architectural features" and "site improvements." The Code defines architectural features broadly to encompass the "exterior of a property as is designed to be exposed to public view." Columbus City Code § 3116.011. The code also defines "site improvement" as "a significant exterior improvement other than a building or structure including but not limited to, landscaping; parking, utility or service area; walkway; fence; mound; wall; sign; mechanical system or similar improvement." Columbus City Code § 3116.018. The section of the Code dealing with site improvements expressly states that landscaping must be compatible with other features of the property and to neighboring buildings and structures and the "overall environment," thereby giving notice to property owners that changes to the exterior of a property located in a historic district will require a certificate of appropriateness. This provision unequivocally requires a homeowner to obtain a permit before making changes to visible

12

landscaping or, as was done here, installing a retaining brick wall to modify the front yard of the home. The fact that Plaintiffs take issue with the substance of this law does not detract from its clarity.[1]

As to the second vagueness challenge, the standards used by the Historic Resources Commission to determine whether to issue a permit are sufficiently clear under both state and federal law. Plaintiffs take issue with the standards, arguing they are vague since they use the terms "appropriate" and" compatible." Where the meaning of a particular provision in a statute appears unclear, however, that provision must be examined in context of the entirety of the ordinance. *See Greenacres Found. v. Zoning Bd. of Bldg. Appeals*, 2012-Ohio-4784, ¶ 10 (citing *In re Univ. Circle, Inc.,* 56 Ohio St.2d 180, 184, 383 N.E.2d 139 (1978)).

While § 3116.09 (B)(1) does state that changes must be "appropriate," the provision specifies that what is appropriate is defined in four sections of the City Code, with the relevant section, § 3116.13 indicating that site improvements must be "compatible" with the building and neighboring properties. Accordingly, the operative standard that guides the commission's decisions as to whether a permit is issued is whether the landscaping or other changes are:

> **compatible to each other** and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment.

Columbus City Code § 3116.13(A) (emphasis added). While the Sixth Circuit has not addressed this exact issue, both the Seventh and Fifth Circuit Courts of Appeal have upheld as constitutional city ordinances that require a homeowner to ensure that changes to his or her historic property are compatible with and conform to neighboring properties. *See Boczar v. Kingen*, 6 F. App'x 471, 476 (7th Cir. 2001) (determining that Indianapolis statute creating

---

[1] This Court will separately address below whether a law that requires preapproval of any changes to a property violates the Ohio Constitution's substantive property guarantees.

historic commission was constitutional and not vague where statute required commission to consider "the historical and architectural style, general design, arrangement, size, texture, and materials of the proposed work and the relation of the proposed work to the architectural factor of other structures in the area"); *Mayes v. City of Dallas*, 747 F.2d 323, 325 (5th Cir. 1984) (determining that Dallas ordinance creating historic preservation committee was constitutional and guidelines articulated by ordinance were sufficiently clear where the guidelines required "the color of a building … [to] harmonize with the structure's facade as well as complement the overall character of the District" and "[t]he manner in which materials are used ... and the fashion in which elements such as columns ... are utilized shall be compatible and harmonize with the existing structures in the block").

Furthermore, the Ohio Supreme Court has also previously upheld similar standards in the context of historic district schemes. *See Vill. of Hudson v. Albrecht, Inc.*, 9 Ohio St. 3d 69, 70, 458 N.E.2d 852, 854 (Oh. 1984). In *Albrecht*, the Ohio Supreme Court considered a similar historic preservation scheme instated by the village of Hudson. That scheme set up an Architectural and Historic Board of Review to ensure the maintenance of the historic character of properties within the municipality by requiring that the board review all applications for building permits. The standards used by the commission to grant or deny permits required the commission to consider, in addition to "accepted and recognized architectural principles," "the development of adjacent, contiguous and neighboring buildings and properties for the purpose of achieving safe, harmonious and integrated development of related properties." *Id*. at 74, 77. The Ohio Supreme Court determined that the ordinance clearly set forth "all the standards reasonably necessary to guide the board in the exercise of its discretion" and that it was thus not an "unlawful delegation of legislative authority." *Id*. at 74.

14

Here, just as in *Albrecht*, the ordinance designating standards to be used in deciding applications for permits requires the Historic Resources Commission to consider whether proposed landscaping changes are compatible to other features of the property and to the neighborhood as a whole. More broadly, the standards for alterations to historic properties provide several other factors for the board to consider, in particular:

> In passing upon appropriateness, the commission shall consider, in addition to any other pertinent factor, the architectural characteristics typical of structures in the district or listed property, the historical and architectural value and significance, architectural style, general design, arrangement, texture, material and color of the architectural feature involved and its relation to the architectural features of other contributing properties in the immediate neighborhood.

Columbus City Code § 3116.11 (12).

At the preliminary injunction hearing Plaintiffs argued that *Albrecht* is distinguishable since it was decided before the Ohio Supreme Court issued a decision holding that a higher level of scrutiny applies to cases where a property owners' rights are implicated in *Norwood v. Horney*, 110 Ohio St. 3d 353, 379 (Oh. 2006). *Norwood*, however, was an eminent domain case and the Supreme Court's holding was expressly limited to those types of cases. *Id.* at 356 (holding "that the void-for-vagueness doctrine applies to statutes that regulate the use of eminent-domain powers. Courts shall apply heightened scrutiny when reviewing statutes that regulate the use of eminent-domain powers."). The Ohio Supreme Court and this Court have repeatedly observed that the *Norwood* decision does not apply outside of claims for eminent domain, even where property rights are implicated. *See In re Application of Columbus S. Power Co.*, 134 Ohio St. 3d 392, 395 (Oh. 2012) (holding that statute requiring public utilities to undergo an annual earnings review by a Public Utilities Commission and return "significantly excessive earnings" was not void for vagueness and refusing to employ heightened scrutiny despite the fact that case involved the taking of private property rights since "[w]e did not

formulate our holding in *Norwood* so broadly . . . [w]e held that heightened scrutiny applies **'when a court reviews an eminent-domain statute or regulation.'**") (emphasis in original); *Wayne Watson Enterprises, LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 919 (S.D. Ohio 2017) (noting that *Norwood* only applies in eminent domain cases and did not apply in case regarding city zoning ordinance affecting property owner's access to a right of way since "*Norwood* was a strict takings case assessing Ohio's power of eminent domain"), *aff'd,* 751 F. App'x 760 (6th Cir. 2018).

Furthermore, the *Norwood* opinion did not alter the standard used for assessing the vagueness of statutory terms, it merely held that the void for vagueness doctrine, which "is usually applied in criminal law and First Amendment claims" can also be applied in eminent domain cases and "in any case in which the statute challenged substantially affects other fundamental constitutional rights." 110 Ohio St. 3d at 380. Importantly, the Ohio Supreme Court adopted the test used by federal courts in assessing the vagueness of a statute pursuant to the United States Constitution and expressly noted that even using heightened scrutiny "a statute is not void simply because it could be worded more precisely or with additional certainty …. [since the] critical question in all cases is whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law; those laws that do not are void for vagueness." *Id.*

Practically, what this means is that eminent domain regulations, criminal laws, and laws implicating First Amendment rights can be examined for constitutionality both facially and as applied, whereas civil regulations that do not implicate fundamental rights are examined for constitutionality on an as-applied basis. *See Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates,*

*Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). In *Albrecht*, the Ohio Supreme Court examined the facial constitutionality of a historic preservation scheme and determined that it was not void for vagueness and provided sufficient standards in its delegation of authority to a Historic Board of Review. Therefore, the Supreme Court of Ohio in *Norwood* left the *Albrecht* holding undisturbed, and it controls this Court's analysis as to whether the "compatibility" standard is sufficiently clear.

Similar standards enacted pursuant to legislative schemes for historic preservation districts have also been held sufficiently clear by state courts around the country. *See Boczar v. Kingen*, No. IP 99-0141-C-T/G, 2000 WL 1137713, at *16 (S.D. Ind. Mar. 9, 2000) (collecting cases), *aff'd,* 6 F. App'x 471 (7th Cir. 2001). *See also Bellevue Shopping Ctr. Assocs. v. Chase*, 574 A.2d 760, 763 (R.I. 1990) (determining that Newport city ordinance establishing a historic zone and authorizing commission to approve or reject permits for modifying properties in zone was not unconstitutionally vague where the ordinance's guidelines required the historic commission to consider "[t]he historic or architectural value or significance of the structure and its relation to the historic value of the surrounding area"); *Salvatore v. City of Schenectady*, 530 N.Y.S.2d 863, 865 (N.Y. App. Div. 1988) (determining that standard requiring "compatibility . . . with existing structures of historic or architectural value . . . and with the environment of open spaces in the surrounding neighborhood" are "sufficiently precise and objectively verifiable to give fair notice and provide minimal guidelines to safeguard against arbitrary or discriminatory enforcement, and are clearly consistent with the legitimate legislative purposes of historic district regulation"); *South of Second Assocs. v. City of Georgetown*, 196 Colo. 89, 94, 580 P.2d 807, 811 (1978) (noting that ordinance requiring historical commission to consider "the effect of the proposed [change] upon the 'general historical and/or architectural character of the structure or

area' . . . the architectural style, arrangement, texture, and material used on existing buildings or structures . . . and their relationship to other structures in the area" contains "sufficient standards to advise ordinary and reasonable men as to the type of construction permitted, permits reasonable application by the Commission, and limits the Commission's discretionary powers"); *City of Santa Fe v. Gamble-Skogmo, Inc.*, 389 P.2d 13, 19 (N.M. 1964) (ordinance requiring historic committee to consider whether proposed changes would be in "harmony with adjacent buildings, preservation of historical and characteristic qualities, and conformity to the Old Santa Fe Style" provided sufficiently clear standards and did not vest "uncontrolled discretion in an administrative body").

Plaintiffs' challenge to the ordinance on the grounds that it is unconstitutionally vague fails since the ordinance provides sufficient guidelines for both homeowners and the reviewing commission.

### b. Delegation of Enforcement to Private Citizens Without Discernable Standards

Plaintiffs also take issue with the fact that the ordinance delegates the authority to grant certificates of appropriateness to the Historic Resources Commission, arguing that this is a "delegation of unfettered regulatory power to … unremovable and capricious non-governmental actors" without discernable standards to guide their decision making. (ECF No. 3 at 19).

The Due Process Clause of the United States Constitution does prohibit the "standardless delegation of power" to private persons. *See Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639, 675 (S.D. Ohio 2016) (citing *Eubank v. Richmond*, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912) and *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928)). To be constitutionally valid, a legislative enactment that delegates power to an enforcement body "must set forth sufficient criteria to guide the

administrative body in the exercise of its discretion." *Vill. of Hudson v. Albrecht, Inc.*, 9 Ohio St. 3d 69, 73–74, 458 N.E.2d 852, 857 (1984). The requirement that there be sufficient guidelines in place, however, takes into account the fact that "it is not possible for the legislature to design a rule to fit every potential circumstance" and that because of this, "legislation may be general in nature, and discretion may be given to an administrative body to make subordinate rules, as well as to ascertain the facts to which the legislative policy applies." *Id.*

Plaintiffs take issue with the fact that the members of the commission are appointed by the Mayor and are unelected "private parties." (ECF No. 3at 19-20). Plaintiffs cite to two recent decisions by other judges in this Court for support. *See Rice v. Vill. of Johnstown, Ohio*, No. 2:19-CV-504, 2020 WL 588127 (S.D. Ohio Feb. 5, 2020); *Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639, 678 (S.D. Ohio 2016). In both cases, however, the issue was not that power was delegated to an unelected body, but that the delegation of power was unaccompanied by discernable standards. *See Rice*, 2020 WL 588127 (determining that ordinance delegating power to determine citywide zoning classifications to Planning and Zoning Commission contained insufficient standards to guide Commission's decision making and thus violated procedural due process doctrine); *Ctr. for Powell Crossing*, 173 F. Supp. 3d at 678 (finding unconstitutional a charter amendment that delegated legislative power to develop citywide comprehensive zoning plan to a "Comprehensive Plan Commission" was "unaccompanied by discernible standards" and essentially unreviewable by the City Council).[2]

---

[2] *Rice* and *Center for Powell Crossing* are also distinguishable on the facts since the delegation of power to private parties in those cases was not simply to determine compliance with an existing zoning regulation, as is the case here, but the power to create and implement zoning regulations and classifications that were essentially unreviewable by the delegating legislative body.

Nothing in either United State Constitution or the Ohio Constitution prohibits a local governing body from delegating power to an enforcement body or commission, so long as that delegation of power is accompanied by clear standards. *See Vill. of Hudson v. Albrecht, Inc.*, 9 Ohio St. 3d 69, 73–74, 458 N.E.2d 852, 857 (1984); *Berman v. Parker*, 348 U.S. 26, 35, 75 S. Ct. 98, 104, 99 L. Ed. 27 (1954) (District of Columbia ordinance delegating authority to agency to "eliminate … blighted areas" contained sufficiently definite standards to be constitutional). As indicated above, the ordinance sets out sufficiently clear standards to guide the decision making of the Historic Resources Commission. Accordingly, the delegation of power to the Historic Resources Commission to issue certificates of appropriateness does not constitute a violation of either the United States or Ohio Constitution's procedural due process guarantees.

### c.      Unconstitutional Burden Shifting

Plaintiffs argue that the procedural due process violations are "multiplied" because the Landscaping Compatibility Mandate forces "homeowners to prove compliance with these vague standards and overcome [the] presumption against their property rights." (ECF No. 3 at 23). Plaintiffs cite to *Speiser v. Randall*, 357 U.S. 513, 526 (1958) to argue that the Historic Preservation Code unconstitutionally shifts the burden on homeowners by presuming them liable for prosecution and fines unless they are able to prove that their landscaping or gardening is not a modification of a distinctive architectural feature or is sufficiently compatible with the property and the neighborhood. (ECF No. 3 at 23). Plaintiffs, however, confuse the issue and conflate where the burden of proof must lie in criminal enforcement actions with where the burden of proof must lie in challenges to the applicability or constitutionality of a zoning ordinance.

In *Speiser*, appellants were veteran taxpayers applying for a California property tax exemption but refused to execute an oath that they did not advocate the overthrow of the

government in order to qualify for that exemption. 357 U.S. at 515. California's rationale for requiring the oath was that the state could deny tax exemptions to individuals who engaged in conduct that was punishable by two criminal statutes. The particular issue presented before the U.S. Supreme Court was whether the state had chosen a fair method for determining whether a taxpayer is a member of the class of individuals who could be criminally punished for advocating the overthrow of the government. The Supreme Court determined that because the state required individuals seeking the tax exemption to sign a loyalty oath, that requirement impermissibly shifted the burden of proving that an individual was not a criminal onto the individual, when the burden of proving criminality ordinarily lies with the state. *Id*. at 513. The Supreme Court explained that, ultimately, the burden of proof can be placed on a defendant, but only after the State has sufficiently provided evidence to allow a defendant to rebut the allegations or to balance the availability of information without subjecting the defendant to hardship. *Id*. at 524 (quoting *Morrison v. California*, 291 U.S. 82, 88-89 (1934)). What the State of California had done was impermissible because it shifted the burden of proving innocence to the taxpayer and limited his freedom of speech without due process. *Id*. at 521, 535.

*Speiser* is distinguishable because the permitting process at issue here is not a criminal enforcement action. Here, the municipality did not presume Plaintiffs' guilt or require them to prove their innocence without due process. Rather, Plaintiffs failed to apply for a certificate of appropriateness for the landscaping they performed on their property as required by C.C. § 3116.04, despite having applied for such permits for past projects on the same property. As a result of their failure to apply for a permit before making changes to their historic property, Plaintiff Stevens was issued a Columbus City Code Violation Notice. (ECF No. 15 at 2-3). Should the City seek to enforce the ordinance through criminal charges, the burden remains on

21

the City to prove that Stevens did not obtain a permit before violating a city code provision and that Defendant does not come within any exception contained in the ordinance. *See State v. Pierce*, 164 Ohio St. 482, 487, 132 N.E.2d 102, 105 (Oh. 1956) (noting that in a "prosecution for the violation of any zoning ordinance, the burden is on the zoning authority to show that the defendant does not come within any exception in the ordinance") (citing *Village of Strongsville v. McPhee*, 142 Ohio St. 534, 27 Ohio Op. 466, 53 N.E.2d 522 (Oh. 1944).

Furthermore, unlike in *Speiser*, Plaintiffs do not bear the burden of proving their innocence in order to apply for and obtain a government benefit (here the certificate of appropriateness), and there is no presumption that their "improvements" are not compatible simply because they received a city code violation notice. Plaintiffs do bear the burden of proving why they should not have to comply with the Historic Preservation Code due to "substantial economic hardship or unusual and compelling circumstances" in order to obtain a permit pursuant to Columbus City Code § 3116.08. Such burden shifting is permissible, even under Ohio law, since Plaintiffs are challenging the constitutionality of the Historic Preservation Ordinance and seeking a variance from this generally applicable zoning ordinance. *See Jaylin Investments, Inc. v. Moreland Hills*, 107 Ohio St. 3d 339, 341 (Oh. 2006) (noting that the "burden of proof remains with the party challenging an ordinance's constitutionality, and the standard of proof remains 'beyond fair debate.' "); *Bd. of Bldg. & Zoning Appeals of City of Highland Heights, Ohio v. Grande*, No. 69082, 1996 WL 65897, at *4 (Ohio Ct. App. Feb. 15, 1996) (noting that property owner bears "the burden of proving his entitlement to a variance") (citing *Duncan v. Vill. of Middlefield*, 23 Ohio St. 3d 83, 86, 491 N.E.2d 692, 695 (1986)); *Brown v. City of Cleveland*, 66 Ohio St. 2d 93, 95, 420 N.E.2d 103, 105 (1981) (noting that zoning ordinances are presumed valid and the party "challenging the relevant provisions of the

Cleveland Zoning Code, has had, at all stages of this litigation, the burden of demonstrating that portions of the zoning code are either facially unconstitutional or unconstitutionally applied to him.").

### 3. Violation of Property Rights Protected by Ohio Constitution

Plaintiffs also argue that the Historic Preservation Code violates the Ohio Constitution's substantive due process and equal protection guarantees for property rights. (ECF No. 3 at 27). Plaintiffs argue that the provisions of the code requiring homeowners to obtain government approval of "every exterior alteration of a private home" is "arbitrary," "unduly oppressive," and not "necessary for the public welfare" because: (1) the standards guiding the permit process are unrelated to historical preservation; and (2) impose a standard requiring "conformity" with neighboring properties rather than "historic preservation." *Id*. Plaintiffs ask this Court to "carefully scrutinize" the City's Historic Preservation Code using a standard of review that is higher than rational basis but less than strict scrutiny, arguing that this heightened standard of review is justified by the Ohio Constitution's substantive property guarantees. (ECF No. 3 at 28) (citing *Yoder v. City of Bowling Green, Ohio,* No. 3:17-cv-2321, 2019 WL 415254, at 4 (N.D. Ohio Feb. 1, 2019)). Defendants argue that the Historic Preservation Code is not arbitrary and does not require Plaintiffs to obtain a permit before performing minor landscaping or gardening, clarifying that a permit is only required if a substantial change to the property or landscaping is made. (ECF No. 15 at 5). Defendants add that an examination of the photographs of Plaintiffs' yard before and after his "improvements" demonstrates that the alterations he has made "cannot be characterized as minor." *Id.*

While the Ohio Constitution does protect substantive property rights as "inviolate," this right is nonetheless "subservient to the public welfare." Ohio Const. art. 1, § 19; *see Jaylin*, 107

Ohio St. 3d at 341. The Supreme Court of Ohio has stated repeatedly that zoning ordinances enjoy a presumption of constitutionality. *See Goldberg Cos., Inc. v. Richmond Hts. City Council*, 81 Ohio St.3d 207, 209 (Oh. 1998). To assess the constitutionality of a zoning ordinance that interferes with a property owner's use of property, Ohio courts place the burden on the plaintiff to prove that the ordinance was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* at 210 (quoting *Euclid*, 272 U.S. at 395).

In a constitutional analysis of an ordinance at issue, the "object of scrutiny is the legislative action" not the "the property owner's proposed use." *Jaylin Invs., Inc.*, 107 Ohio St. 3d at 339. The focus of the constitutional analysis is the " legislative judgment underlying the enactment, as it is applied to the particular property, not the municipality's failure to approve what the owner suggests may be a better use of the property." *Id*. Unless a plaintiff meets his or her burden of showing that the legislative action taken was "arbitrary and unreasonable … and the decision has no substantial relation to the public health, safety, morals, or general welfare," "[c]ourts should not interfere with zoning decisions." *Id.* at 341; *see also Arendas v. Bd. of Trs.*, 2008-Ohio-6599 *P9 (Ohio Ct. App. 2008), *Winer v. Clay Twp.*, 208-Ohio-8765 *P21 (Ohio Ct. App. 2017).

Plaintiffs do not contest that the City is trying to meet a substantial interest in preserving the historical character of its districts, but rather they argue that Historic Preservation Code's Landscaping Mandate fails "to substantially advance" the stated goal of preserving the area's historic character." (ECF No. 3 at 28). More specifically, Plaintiffs argue that the Landscaping Mandate is: (1) over-inclusive because it requires approval of every exterior alteration of one's home; (2) under-inclusive because it treats homeowners disparately if their property is exempt as

a result of "grandfathering" or due to other exemptions; and (3) finally, the ordinance requires "complete and total conformity and homogeneity," which erases "individual efforts, preferences, choices, and privacies." (*Id.* at 30).

The express terms of the ordinance contradict Plaintiffs' claims that the Landscaping Mandate requires approval of every exterior alteration of one's home. As this Court has already determined above in Section III. A. 2. a., the terms of the ordinance make clear that a permit is only required before a homeowner makes "a significant exterior improvement" to the property, including lanscaping. Columbus City Code § 3116.018. Additionally, the ordinance neither explicitly nor implicitly requires "complete and total conformity" since the standards for alteration of architectural features require property owners and the Commission to consider, among other factors, that:

> (2) The distinguishing characteristics of the property shall not be destroyed. The removal or alteration of any historic material or distinctive architectural feature shall be avoided whenever possible.
> (3) Each property shall be recognized as a product of its own time. Alterations that have no historical basis and which seek to create an earlier appearance shall be discouraged.
> ….
> (5) Distinctive stylistic features and examples of craftsmanship that characterize a property shall be treated with sensitivity.

Columbus City Code § 3116.018.

Plaintiffs' claim that the ordinance treats similarly situated homeowners differently is also without merit. Plaintiffs point to exceptions within the ordinance for homeowners whose properties include non-conforming features built prior to the enactment of the Historic Preservation Code or who otherwise prove their entitlement to an exemption. The Supreme Court of Ohio, however, has recognized a distinction between zoning laws that target property owners seeking to develop their property versus property owners seeking to "maintain a legal nonconforming use." *State ex rel. Sunset Estate Properties, L.L.C. v. Lodi*, 30 N.E.3d 934, 938,

142 Ohio St.3d 351, 355, 2015 -Ohio- 790, ¶ 14 (Oh. 2015) (finding unconstitutional a zoning ordinance which deprived mobile homeowners of an existing use of their property by imputing their abandonment after they had discontinued use of the property for six months or more). Here, Plaintiffs do not contest that they purchased their home after the enactment of the Historic Preservation Code and with full knowledge that the home was located in and subject to the zoning regulations applicable to historic homes. Plaintiffs also have not met their burden of proving disparate treatment of similarly situated homeowners, since they failed to point to a homeowner who has received a permit to landscape their property in the same manner after the enactment of the contested ordinance, without making changes to their proposed landscaping to meet the suggestions of the Historic Resources Commission.

Ultimately, Plaintiffs have also failed to meet their burden of proving that the provisions of the Historic Preservation Code at issue in this case have no "substantial relation" to the City's stated interest in preserving the historical character of its districts. The stated purpose of the Historic Resources Commission is to:

> Identify structures, groups, districts and sites of historic and architectural significance and to provide a method of regulation through design review to:
> (A) Promote the importance of historic preservation throughout the city;
> (B) Identify and list the diverse historic resources of the city;
> (C) Preserve, stabilize and improve neighborhoods, business districts and property for the enjoyment of all the people of the city;
> (D) Foster civic pride in the beauty and accomplishments of the past;
> (E) Strengthen the city's economy through the creation of new jobs;
> (F) Protect the unique historical and architectural character of listed properties; and
> (G) Increase the city's tax base through reinvestment in older buildings.

Columbus City Code § 3117.005. While the HRC's guidelines do focus on aesthetic compatibility with existing structures and neighboring properties as opposed to historic accuracy, to pass constitutional muster, the City is not required to choose the best or most effective means of achieving its stated interest. The city's regulation must only bear a substantial relationship to

the city's stated goals, and the Supreme Court of Ohio has already expressly approved of historic preservation schemes that focus primarily on aesthetics. *See Village of Hudson v. Albrecht, Inc.*, 458 N.E.2d 852, 856, 9 Ohio St.3d 69, 72 (Oh. 1984) (finding constitutionally valid village historic preservation ordinance which focused on aesthetics, noting there is "a governmental interest in maintaining the aesthetics of the community."). Furthermore, it is not this Court's place to "determine the character and degree of regulation required" since "the local legislative body is familiar with local conditions and is therefore better able than the courts" to make a determination as to the best manner to achieve its legislative aims. *Lodi*, 142 Ohio St.3d 351 at 353 ¶ 8 (Oh. 2015). Accordingly, this Court must deny Plaintiffs' motion for permanent injunctive relief since Ohio law and the Ohio constitution make clear that the City of Columbus' Historic Preservation Code does not violate Plaintiffs' substantive constitutional rights.

### B.  Other Factors

Courts considering whether to grant a permanent injunction analyze whether a plaintiff: (1) suffered a constitutional violation; (2) that will constitute a continuing irreparable injury; (3) for which there is no adequate remedy at law; and (4) balance the public interest and the balance of hardships. *See e.g., Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998) (citing *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir.1997) (en banc)). Whether a plaintiff has suffered a constitutional violation, however, is a threshold inquiry since the violation of a plaintiff's constitutional rights is sufficient to demonstrate irreparable harm. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *Planned Parenthood Southwest Ohio Region v. Hodges*, 138 F.Supp.3d 948, 960 (S.D. Ohio 2015) ("[W]hen a constitutional right is being threatened or impaired, a finding of irreparable harm is mandated."). Accordingly, because Plaintiffs have failed to show that they

27

have suffered a constitutional violation, this Court need not consider the remaining factors. *See* e.g., *Jolivette v. Husted*, 886 F. Supp. 2d 820, 837 (S.D. Ohio), *aff'd*, 694 F.3d 760 (6th Cir. 2012).

## IV.    CONCLUSION

For these reasons stated above, this Court **DENIES** Plaintiffs' motion for injunctive and declaratory relief. (ECF No. 3).

**IT IS SO ORDERED.**

_____

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  July 7, 2020**