**Chapter 3116 - HISTORIC PRESERVATION AND ARCHITECTURAL REVIEW**

3116.01 - Definitions.

For the purposes of Chapters 3116 to 3119, inclusive, terms, phrases and words defined in C.C. 3116.011 through 3116.019, inclusive, and their derivations shall have the meaning given therein.

When not inconsistent with the context, words used in the present tense include the future, words in the plural number include the singular number, words in the singular number include the plural number and words in the masculine gender include the feminine and neuter. Definitions contained in Chapter 3303, C.C., and not in conflict with Chapter 3116, C.C., shall apply.

(Ord. 1515-89; Ord. 2229-04 § 7.)

3116.011 - Letter A.

"Aggrieved third party" means any owner or resident of a lot within one hundred twenty-five (125) feet of the applicant's subject property or any area commission or neighborhood organization within whose jurisdiction the subject property lies.

"Alteration" means any material or visual change, other than normal maintenance and repair to the exterior of any structure located within those districts set out in Chapters 3319 or to any listed property designated pursuant to Chapter 3117, C.C., or to the publicly accessible interior of any listed property which was listed in part, or in whole, because of the interior's historic or architectural significance.

(1)   "Adverse alteration" means an alteration that destroys or damages one or more architectural features of the structure or listed property, or is inappropriate to the site or to the architectural characteristics of the district. An adverse alteration is identified by the commission using the standards contained within this chapter or adopted hereunder, pertinent typical architectural characteristics, and such guidelines now or hereafter developed for said listed property or district.

(2)   "Interior alteration" means an alteration of an interior space that is publicly accessible and is reviewed only if the subject listed property was designated in part, or in whole, because of the interior's historic or architectural interior significance.

(3)   "Minor alteration" means a change that has a minimal impact on a structure or listed property including, but not limited to, in-kind replacement or repair of deteriorated building elements and changes that affect only a small portion thereof.

(4)   "Substantial alteration" means an alteration that has a major impact on the architectural features, characteristics or integrity of a structure or listed property including, but not limited to, changes in or additions to: windows, window

**Exhibit A**

frames, railings, porches, balconies, ornamentations, fencing and site improvements such as regrading and filling.

"Applicant" means any person or his representative who applies for a building or demolition permit or for a certificate of appropriateness therefor for construction, alteration or demolition of a listed property or structure.

"Appurtenance" means any structure or object subordinate to a principal structure or site located within a listed property or architectural review commission area and visible from the public right-of-way including, but not limited to, a bicycle rack, carriage house, display sign, fence, fixture, fountain, garage, outbuilding, pavilion, public artwork, statue, street furniture, shed, trellis, vending machine or similar item.

"Architectural feature" means the architectural treatment and general arrangement of such portion of:

(1)    The exterior of a property as is designed to be exposed to public view; and

(2)    The publicly accessible interior of any listed property which was listed in part, or in whole, because of the interior's historic or architectural significance; including kind, color and texture of the building material of such portion and type of all windows, doors, lights, signs and any other fixtures appurtenant to such portion.

"Architectural review commission" means one of the commissions created by Chapter 3119. "Area" means a specifically delineated geographic division of the city.

(Ord. 1352-93; Ord. 2229-04 § 8.)

3116.012 - Letters B and C.

"Board" when used without clarification means the board of commission appeals.

"Building inspector" means the officer charged with administration and enforcement of the Building Code, or his regularly authorized deputy.

"Case file" means the file created and maintained by the historic preservation officer for each property within a commission's jurisdiction that is the subject of an application containing said application; exhibits such as, but not necessarily limited to, affidavits, photographs, drawings, plans, material samples and cost estimates filed by applicant; audio tapes and/or summary minutes of pertinent commission meetings; official transcripts provided by applicant; the mediation record pursuant to C.C. 3116.10; and a chronological listing of action taken.

"Certificate of appropriateness" or "certificate" means a certificate issued by the commission to an applicant stating that the proposed construction, alteration or demolition of a structure, architectural feature or listed property pursuant to the application filed therefor is appropriate under the terms of the chapter pertinent thereto and consistent with the architectural characteristics, guidelines and standards affecting same or due to unusual and compelling circumstances or substantial economic hardship does not require such consistency; and that, therefore, a permit can be issued therefor.

"Characteristics" means unique attributes or qualities of a property specifically pertaining to such property as set out in the city codes.

"Clearance" means a determination by the city historic preservation office that proposed work to be done on a property does not affect any architectural feature and therefore does not require a certificate of appropriateness.

"Columbus Register of Historic Properties" or "Columbus Register" means the city's record of listed properties.

"Commission" when used without clarification means the historic resources commission created by Chapter 3117, C.C., or the architectural review commission created by Chapter 3119, as the case may be, having jurisdiction over the application.

"Concept review" means an evaluation of a preliminary design or general plans for an alternation, new construction, demolition or site improvement.

"Construction" means the process of building, erecting or placing a structure, appurtenance or object within a listed property or district.

"Contributing property" (see C.C. 3116.017).

(Ord. 1352-93; Ord. 628-02 § 2; Ord. 1869-03 § 1; Ord. 2229-04 § 9.)

3116.013 - Letters D, E and F.

"Demolition" means the process of razing or removing all or a substantial portion, of a building, structure or appurtenance from a listed property or a district. The difference between "demolition" and "relocation" should be noted. "Demolition" is the broader term; "relocation" denotes moving a structure or appurtenance intact to another location.

"Department" unless otherwise specified means the department of development.

"Director" when used without clarification means the director of development or his or her designee.

"District" means either: (A) the architectural review commission area as set out in Chapter 3119 in which the property subject to the application is located; or (B) relative to listed properties under the historic resources commission in Chapter 3117, means ten (10) or more structures and/or sites grouped together in a geographically defined area possessing a significant concentration, linkage or continuity of structures, appurtenances or sites that are united by past events, aesthetics, plan, or physical development and where at least fifty (50) percent of the structures satisfy the requirements of C.C. 3117.05 in which the property subject to the application is located.

"Economic return" means a profit or increase in value from use or ownership of a site, structure, building, appurtenance or object that accrues from investment of capital or labor.

"Facade" means the face or front of a structure or any vertical surface thereof adjacent to a public way.

(Ord. 1515-89; Ord. 628-02 § 3; Ord. 2229-04 § 10.)

3116.014 - Letters G, H and I.

"Group" means two (2) or more structures, objects and/or sites each of which satisfies C.C. 3117.05 requirements and all of which are located in geographical proximity and are united by aesthetics, past events, plan or physical development.

"Guidelines" means the document adopted by a commission that sets forth the architectural characteristics of a listed property or an architectural review commission area, or a specific property therein and provides design guidance for appropriate construction or alteration therein pursuant to the provisions of the pertinent chapter. Guidelines and standards are intended to be consistent with each other.

"Historic preservation officer" means the person in the department's planning office who is assigned the duties and responsibilities of historic preservation, or his or her designee.

"Intrusion" means an object, site or structure which detracts from a listed property's or district's significance because of its incompatibility with the sense of time and place and historical development; or its incompatibility of scale, materials, texture or color; or whose integrity has been irretrievably lost; or whose physical deterioration or damage makes rehabilitation infeasible.

"Inventory" means a systematic identification of properties having cultural, historical, architectural or archaeological significance compiled according to standards adopted by council for evaluating property to be considered for designation as a listed property in the Columbus Register of Historic Properties or on the National Register of Historic Places.

(Ord. 1045-98 § 5; Ord. 1869-03 § 2.)

3116.015 - Letters J, K and L.

"Listed property" means any structure, group, district or site so designated by council and placed on the Columbus Register of Historic Properties pursuant to the provisions of Chapter 3117 as well as each structure, site or appurtenance therein.

(Ord. 1515-89.)

3116.016 - Letters M, N and O.

"Normal maintenance or repair" means any maintenance or repair limited to correcting decay, deterioration or damage to an architectural feature, and that does not require a building permit and that has received a certificate of appropriateness or clearance from the historic preservation staff.

"Noncontributing property" (see C.C. 3116.017.)

"Owner" means the owner of record as shown on the current tax list of the county auditor; the mortgage holder of record, if any, as shown in the mortgage records of the county recorder; and any purchaser under a land contract. "Owner" also means any

person who has a freehold or lesser estate in the premises; a mortgagee or vendee in possession; or any person who has charge, care or control of the premises as agent, executor, administrator, assignee, receiver, trustee, guardian or lessee.

(Ord. 1515-89; Ord. 628-02 § 4; Ord. 1869-03 § 3.)

3116.017 - Letters P, Q and R.

"Property" means any structure, group, district or site subject to the provisions of Chapter 3117 or Chapter 3319. A contributing property is at least forty (40) years of age or contributes to the architectural character or historical and architectural significance of a group or district. A noncontributing property is less than forty (40) years of age or does not make such a contribution.

"Register" when used without qualification means the Columbus Register of Historic Properties, the city's record of listed properties.

"Rehabilitation" means the act or process of returning a building, object, site, or structure to a state of utility through repair, remodeling or alteration that enables an efficient contemporary use while preserving those portions or features of the building, object, site or structure that are significant to its historical, architectural and cultural values.

"Relocation" means any change in the location of a structure or object from one setting to another.

"Restoration" means the act or process of accurately recovering the form and details of a building, object, site or structure and its setting as it appeared at a particular period of time by means of the removal of later work or by the replacement of missing earlier work.

(Ord. 1515-89; Ord. 2229-04 § 11.)

3116.018 - Letters S, T, U and V.

"Site" means any significant historical, archaeological, or architectural property without a principal structure such as the location of a prehistoric or historic activity, or a significant event. A site may also include a property of significant landscape design. This definition of "site" shall not be construed to limit the term "site plan" or "site improvement."

"Site improvement" means a significant exterior improvement other than a building or structure including but not limited to, landscaping; parking, utility or service area; walkway; fence; mound; wall; sign; mechanical system or similar improvement.

"Stabilization" means the act or process of applying measures designed to reestablish a weather-resistant enclosure and structural stability to an unsafe or deteriorated building, structure, site or object while maintaining its existing essential form.

"Staff" means personnel with qualifications defined by the historic preservation officer assigned to the commission having jurisdiction over the application.

"Staff approval" means the act or process of the issuance of a certificate of appropriateness by the historic preservation office staff, under the authority of the pertinent architectural review commission.

"Standard" means a regulation set out in C.C. 3116.11 to 3116.14, inclusive, and generally defining what constitutes an appropriate alteration, construction, site improvement, or demolition.

"Structure" means a building, object, monument, work of art, or work of engineering permanently affixed to the land or any combination or any material thing of functional, aesthetic, cultural, historical or scientific value that may be by nature or design, movable yet related to a specific setting or environment; or any combination of materials to form a construction that is safe and stable including, but not limited to, stadia, tents, reviewing stands, platforms, stagings, observation towers, radio towers and graphics. The term "structure" shall be construed as if followed by the words "or part thereof." The distinction between "structure" and "building" should be noted. "Structure" is the broader term; "building" is a restricted form of "structure."

For abatement of a nuisance, in addition to the above, "structure" shall include appurtenance, scaffold, ash pit, wagon, auto trailer, junk, rubbish, excavation, wall or any object or thing used or maintained above or below the ground, or any part thereof.

"Substantial economic hardship" means a financial burden imposed upon an owner which when factually detailed and measured by standards and criteria of this chapter is unduly excessive preventing a realization of an economic return upon the value of his property.

"Unusual and compelling circumstances" means those uncommon and extremely rare instances, factually detailed and conforming to the standards and criteria therefor contained in this chapter, warranting a commission's decision contrary to its architectural characteristics, guidelines or standards or the board's decision on appeal contrary to that of the commission due to the evidence presented.

(Ord. 1352-93; Ord. 1869-03 § 5.)

3116.019 - Letters W, X, Y and Z.

No entries.

(Ord. 1515-89.)

3116.02 - Purpose.

This chapter provides uniform definitions, requirements and procedures for Chapters 3117, 3118, and 3119, inclusive.

(Ord. 1515-89; Ord. 2229-04 § 12.)

3116.03 - Guidelines required.

(A)    Guidelines adopted by commissions prior to enactment of this section are exempt from its provisions; and are hereby approved by council. Amendments subsequent to enactment of this section shall conform to all provisions hereof.

(B)    Within one (1) year after a new architectural review commission is established or a property is listed on the Register the commission shall prepare guidelines for the district or listed property consistent with the standards of this chapter, give notice thereof, and seek comments thereon according to the following procedure.

(C)    Upon completion of proposed guidelines the commission shall give notice as to where the proposed guidelines are on file and available for review and the time and place of a public hearing thereon by mailing same to each owner of property in the listed property or district and any area commission or neighborhood organization within whose jurisdiction the listed property or district lies; and by publishing same in The City Bulletin as early as possible prior to the hearing.

(D)    Comments on the proposed guidelines may be submitted in writing to the historic preservation officer or in person at the public hearing. The commission will consider such comments in the final document.

(E)    Upon completion of the final document, the historic preservation officer shall give notice in The City Bulletin that guidelines have been finalized, are on file, are available for review and tentatively will be submitted to council on a specific date. Comments received on the final document shall be considered for incorporation into the guidelines prior to submission to council.

(F)    The commission shall consider the guidelines for approval. The planning division shall review the guidelines and prepare comments for city council. The historic preservation officer shall forward the guidelines to city council for final adoption.

(Ord. 1352-93.)

3116.04 - Certificate required.

Except in cases excluded by C.C. 3116.23, no person shall construct, reconstruct, alter, change the exterior color of or demolish any listed property or architectural feature thereof or any structure or architectural feature now or hereafter in a district or make site improvements thereon without first applying for a certificate of appropriateness therefor and obtaining either such certificate of appropriateness or a clearance.

The applicant shall deposit his application with the historic preservation officer in the manner and form provided by C.C. 3116.06 and 3116.07.

(Ord. 1352-93.)

3116.05 - Certificate that no architectural feature is involved.

If the historic preservation officer determines that no architectural feature is involved, it shall cause staff to endorse on the application or to issue a clearance.

(Ord. 1352-93; Ord. 1869-03 § 7.)

3116.055 - Staff approvals.

Each commission shall provide in its guidelines, or by resolution, that the historic preservation officer may administratively approve certain actions as defined by the commission. A certificate of appropriateness shall be issued to the applicant upon such an administrative approval. The commission shall identify and approve the construction, reconstruction, alteration, demolition or site improvement which the historic preservation officer staff may administratively approve and shall publish the list of staff approvable work items annually. The historic preservation officer or the applicant shall have the option of referring any application to the appropriate architectural review commission.

Staff shall report all approvals to the commission at its regularly scheduled meetings.

(Ord. 1869-03 § 7.)

3116.06 - Application for certificate.

(A)   The owner shall file an application for a concept review or a certificate of appropriateness with the commission in accordance with the provisions of this chapter upon the city's application form prepared for such use.

(B)   The commission shall consider applications at its regularly scheduled meetings, and shall consider an application at its next regularly scheduled meeting only if it was filed at least ten (10) days prior thereto and notice was published in the City Bulletin prior to said meeting.

(C)   The historic preservation officer shall review each application, determine the completeness of an application based on 3116.07 and make a recommendation thereon. Such applicant may meet with the historic preservation officer prior to the commission's review of the application.

(Ord. 1352-93; Ord. 628-02 § 5.)

3116.07 - Materials required for consideration.

In addition to the application for a concept review or a certificate of appropriateness, certain supplemental material regarding architectural compatibility shall be required and others may be required.

(A)   The following materials shall be required for any application for a concept review:

(1)    Photographic documentation in the form of color prints of the property including, but not necessarily limited to the following images of the property: setting and location characteristics; each facade or vertical surface affected by the construction, alteration or demolition; and architectural features or appurtenances impacted by the proposal.

(2)    A simple drawing or rendering or written specification of the work to be performed and a site plan.

(B)    The following materials shall be rewired for any application for certificate of appropriateness:

(1)    Photographic documentation in the form of color prints of the property including, but not necessarily limited to the following images of the property: setting and location characteristics; each facade or vertical surface affected by the construction, alteration or demolition; and architectural features or appurtenances impacted by the proposal.

(2)    Samples of materials and colors of finishes, product literature or descriptions of materials and finishes to be used, when relevant.

(3)    Drawings or rendering of any graphic or sign to be installed on the property and its proposed location.

(B)    In addition to (A)(1), (2) and (3) above, any application for a minor alternation shall include: a simple drawing or rendering or written specifications of the work to be performed: a site plan or photocopy of the pertinent page or partial page era property atlas from the main branch of the Columbus Metropolitan Library or the department.

(C)    In addition to (A)(1), (2) and (3) above, any application for new construction or substantial alternation shall include: a complete set of construction drawings including site plan, facades and other exterior surfaces, landscaping plan and detail drawings.

(D)    In addition to (A)(1) and (3) above, any application for demolition shall include: a site plan or photocopy of the pertinent page or partial page of a property atlas from such library or the department and plans for the new construction or landscaping to replace the demolished structure according to requirements in (C) above.

If preparation of any item above is beyond the physical or financial means of the owner, the commission may request that the historic preservation officer prepare it.

(Ord. 1045-98 § 6; Ord. 628-02 § 6.)

3116.08 - Documentary evidence for commission.

(A)    The director may promulgate rules and regulations designed to assist applicants in demonstrating economic hardship or unusual and compelling circumstances. These rules and regulations shall not call for the onerous production of documents

and data. It is the intention of this section that the level of documentation required of an applicant may vary as is appropriate to each case.

(B)     For any application the applicant bears the burden of providing documentary evidence to show any substantial economic hardship or unusual and compelling circumstances either with the original application at the time of filing or separately thereafter. It is advisable for the applicant to provide as much documentation as possible. Applicants are encouraged to meet with the historic preservation officer to determine the level of documentation appropriate to each case. The historic preservation officer will use the following as a standard for determining the documentation necessary.

(1)     In addition to the materials required by C.C. 3116.06 and 3116.07, an applicant who desires to present a case for substantial economic hardship shall provide the following information to the extent it is available or appropriate:

(a)     The amount paid for and date of purchase of the property if purchased within two (2) years prior to the application; copies of the two (2) most recent appraisals of the property; real estate tax bills or receipts for the two (2) years immediately preceding the application; any listings of the property for sale or rent; any written offers to purchase or rent the property, including any amendments thereof or documents pertinent thereto; any consideration of the applicant for adapting the property to a new use; and a detailed cost comparison of the work proposed by applicant and any alterative consistent with architectural standards and guidelines for the property.

(b)     For all income-producing property: annual gross income from and itemized operating expenses for the property for the past two (2) years; and evidence that the owner or applicant has made a reasonable effort to obtain an economic return thereon.

(c)     For showing substantial reduction in the value of the property: estimates of the value of the property with applicant's requested proposal and with alternatives consistent with the architectural standards and guidelines for the property.

(d)     For showing that alternatives are not within applicant's financial means: a statement of applicant's annual income and expenses either as an income tax return and budget or as an accountant's statement; and an estimated differential in initial and annual costs between applicant's proposal and conformity to architectural standards and guidelines for the property. Actual bids shall be preferred.

(2)     In addition to the materials required by C.C. 3116.06 and 3116.07, an applicant who desires to present a case for unusual or compelling circumstances may provide the following as appropriate:

(a)     A statement of such circumstances.

(b)     For showing that no other reasonable means exist for saving the property: copy of condemnation or housing order based on deteriorated condition of property; a structural analysis by a licensed architect, engineer or contractor

experienced in alterations to historic properties as to the structural soundness of the property or architectural feature accompanied by the individual's or firm's qualifications for making such analysis; documentation that property has been offered for sale.

(c) For showing that the property cannot be reasonably maintained in the manner desired by the commission: a report by a licensed architect, engineer or contractor experienced in alterations to historic properties that the unusual design, materials, texture or details prohibit the reasonable maintenance of the property or exterior architectural feature with an explanation as to how the property's location is not conducive to its reasonable maintenance accompanied by the individual's or firm's qualifications for making such a report.

(d) In addition to materials in (B)(2)(a), (b) and (c), for showing that a nonprofit organization cannot financially or physically achieve its purpose: a copy of its charter and bylaws or mission statement; an explanation of how the applicant's proposed construction, alteration or demolition is essential to the charitable purposes of the organization and how the commission's recommendation conflicts therewith; an estimated differential in costs between applicant's proposal and consistency with the architectural standards and guidelines for the property (actual bids are preferred); and documentation of the organization's tax-exempt status.

(Ord. 377-95.)

3116.09 - Issuance of certificate.

(A) At the public hearing the commission shall issue a concept approval pending the submission of final construction drawing to be approved by the commission.

(B) At the public hearing the commission shall issue a certificate of appropriateness to the applicant if one of the following conditions applies:

(1) The alteration, construction, site improvement, or demolition is appropriate as defined by the architectural standards in C.C. 3116.11, 3116.12, 3116.13 or 3116.14, respectively, the pertinent typical architectural characteristics and such guidelines as the commission shall have adopted; or

(2) Although inappropriate such proposal due to unusual and compelling circumstances as defined in C.C. 3116.018 and by C.C. 3116.16 criteria affects only the subject structure and not the listed property or district generally and such certificate may be issued without substantial detriment to the public welfare and without substantial derogation from the intent and purpose of this chapter or of the chapter pertinent to the subject property; or

(3) Failure to issue such certificate will result in a substantial economic hardship for the applicant as defined in C.C. 3116.01 and by C.C. 3116.15 criteria and such certificate may be issued without substantial detriment to the public

welfare and without substantial derogation from the intent and purpose of this chapter or of the chapter pertinent to the subject property; or

(4)   The commission fails to make a determination hereinbefore prescribed, and the certificate of appropriateness may be issued without substantial detriment to the public welfare and without substantial derogation from the intent and purpose of this chapter or of the chapter pertinent to the subject property.

(B)   An affirmative vote by a majority of the members present, but in no case less than a quorum, shall cause issuance of a certificate of appropriateness.

(C)   If the proposed alteration will not affect any architectural feature of the structure or listed property, the commission may, without public hearing, review the application and issue a certificate of appropriateness subject to reasonable terms and conditions.

(Ord. 1515-89; Ord. 628-02 § 7; Ord. 1132-2008 Attach. (part).)

3116.10 - Procedure following denial of certificate.

(A)   If the commission determines that a proposed alteration, construction, demolition or site improvement is inappropriate, the commission may deny a certificate. Within ten (10) days after its decision, the commission shall issue a written decision setting forth the reasons for denial and send a copy of such decision to the applicant

(B)   Within ten (10) days after receipt of denial the applicant may apply for a rehearing, appeal the decision to the board of commission appeals or apply for mediation in accordance with the provisions of this chapter.

(C)   Mediation. A substantial alteration, construction or demolition may be the subject for mediation. Mediation may occur by mutual agreement between an applicant and a commission or by the historic preservation officer's determination after review of the facts that mediation of the dispute is in the best interests of the parties. The director shall create and maintain a common roster of potential mediators. Within fourteen (14) days after receipt of an application for mediation a mediator shall be appointed by the historic preservation officer. Costs for the mediator, if any, shall be divided equally and paid by the applicant and the city. Mediation towards resolution may occur during the next forty-five (45) days after selection of the mediator by the historic preservation officer. When the matter is resolved a certificate will be issued at the next regularly scheduled commission meeting. If there is no resolution, mediation may be extended an additional fourteen (14) days by mutual agreement of all parties. Lacking such agreement, the commission shall issue its final order at the next regularly scheduled commission meeting.

(D)   Alternative Plan Development. As part of mediation, the commission and the applicant shall attempt in good faith to develop an alternative plan that is appropriate under the applicable standards and criteria set forth in C.C. 3116.11 to 3116.16. inclusive. The commission may schedule one (1) or more public hearings to consider any alternate plan, which differs substantially from the original application, of which written notice shall be sent by certified mail to the owner and

applicant at least ten (10) days prior to the hearing and published in the City Bulletin. Said notice shall state the nature of the hearing, the structure involved, and the time, date and place of the hearing, Such public hearings may be scheduled at the earliest possible time agreed upon by the owner, applicant and commission representatives.

(E)     Within ten (10) days after conclusion of any procedures set out in (C) or (D) above, or appeal of C.C. 3116.20 following denial of certificate of appropriateness an applicant may appeal such decision to the board of commission appeals pursuant to C.C. 3118.05 and 3118.06.

(Ord. 377-95; Ord. 628-02 § 8.)

3116.11 - Standards for alteration.

The following standards shall apply to evaluation of the appropriateness of a proposed alteration:

(1)     Every reasonable effort shall be made to use the property for its originally intended purpose or to provide a compatible requiring minimal alteration.

(2)     The distinguishing characteristics of the property shall not be destroyed. The removal or alteration of any historic material or distinctive architectural feature shall be avoided whenever possible.

(3)     Each property shall be recognized as a product of its own time. Alterations that have no historical basis and which seek to create an earlier appearance shall be discouraged.

(4)     Changes which have taken place over the course of time are evidence of the property's history and environment. These changes may have acquired significance in their own right and, if so, this significance shall be respected.

(5)     Distinctive stylistic features and examples of craftsmanship that characterize a property shall be treated with sensitivity.

(6)     Deteriorated architectural features shall be repaired rather than replaced whenever possible. In the event replacement is necessary, the new material shall match the material being replaced in composition, design, color, texture and other visual qualities. Repair or replacement of missing architectural features shall be based on accurate duplications of features, substantiated by historic, physical or pictorial evidence rather than on conjectural designs or the availability of different architectural elements from other structures.

(7)     The gentlest means possible shall be used to clean the property's surface if necessary. Sandblasting and other cleaning methods that will damage the historic building materials are prohibited.

(8)     Archaeological resources affected by or adjacent to any alteration shall be protected and preserved.

(9)   Contemporary design for alteration to a property shall not be discouraged when such alteration does not destroy significant, historical, architectural or cultural material and its design is compatible with the size, scale, color, material and character of the property, its environment and surrounding contributing properties.

(10)   Whenever possible, a new addition or alteration shall be accomplished so that its future removal will not impair the essential form and integrity of the structure.

(11)   Exterior cladding of a structure shall be consistent with the original materials used on the property.

(12)   In passing upon appropriateness, the commission shall consider, in addition to any other pertinent factor, the architectural characteristics typical of structures in the district or listed property, the historical and architectural value and significance, architectural style, general design, arrangement, texture, material and color of the architectural feature involved and its relation to the architectural features of other contributing properties in the immediate neighborhood.

(Ord. 1515-89.)

3116.12 - Standards for new construction.

The following standards shall apply to the evaluation of the appropriateness of proposed new construction:

(A)   New structures should look new, reflecting contemporary design standards while using contemporary design elements that relate to existing contributing properties surrounding the new structure. Building height, width, mass and proportion effect the degree of compatibility between the old and the new.

(B)   An applicant who intends to utilize a property as any part of a development shall consider the context of the property's original location and the importance of the setting in the new development. If the proposal will occupy the full property, development opportunities may be limited to rehabilitation, renovation or restoration for adaptive reuse. If the proposal occupies less than the full site, greater flexibility will be available.

(C)   Height as viewed from the street shall be compatible with adjacent contributing properties. Setoffs may be used at upper levels. Physical size and scale shall be compatible to existing contributing properties without overwhelming them.

(D)   The proportion of openings, width and height of windows, doors and entries, shall be visually compatible with adjacent contributing properties and open space. A long, unbroken facade in a setting of existing narrow structures shall be divided by openings, setoffs or decorative details into smaller bays thereby complementing the streetscape.

(E)   The rhythm or relationship of solid spaces to voids (i.e., walls to windows and doors), in the facade of a structure shall be visually compatible with adjacent contributing properties and open spaces in its environment.

(F)   The rhythm of spacing, the relationship of a structure to the open space between it and adjoining structures, shall respect the surrounding environment. The building mass of a large development project can be varied in form by using setoffs for open space and landscaping when appropriate to provide necessary visual transitions between a large structure and adjacent properties.

(G)   The rhythm of projections, the relationship of entrances, porches and other projections to sidewalks or streets, shall be guided by the streetscape provided by adjacent and visually-related structures and open spaces.

(H)   The choice of material, texture and color for the facade of the structure should relate attractively to and be tempered by the predominant material, texture and color of adjacent and visually-related structures. Simplicity is preferable.

(I)   The structure's roof shape is a major distinguishing visual element. Generally a simple roof shape similar in form and type to adjacent and visually-related roofs is appropriate.

(J)   Appurtenances of a structure such as walls, fences and masses shall be in keeping with the environment and form cohesive enclosures along a street to insure visual compatibility with the adjacent, visually-related structures and open spaces. Landscaping including grass, trees, shrubbery and flowers shall be included, especially in parking and sidewalk areas.

(K)   Scale, the size and mass of structures in relation to open spaces, openings and projections, shall be compatible with adjacent, visually-related structures and open spaces.

(L)   A structure which has frontage on more than one street or alley resulting in multiple facades shall require application of compatibility standards to each facade.

(M)   The commission shall consider, in addition to any other pertinent factors, the architectural characteristics typical of structures in the district or listed property, the historical and architectural value and significance, architectural style, general design, arrangement, texture, material and color of the architectural feature involved and its relation to the architectural features of other structures in the immediate neighborhood.

(N)   Where brick predominates in nearby structures new construction shall be of brick. If frame predominates in nearby structures, then new construction shall be of frame. Where vacant land predominates, brick shall be preferred.

(Ord. 1515-89.)

3116.13 - Standards for site improvements.

(A)   Landscaping, parking, utility or service areas, walkways and similar improvements should be compatible to each other and to the subject building or structure as well as to adjacent contributing properties, open spaces and the overall environment.

(B)   Fences of wrought iron, stone or wood are encouraged. Chain link fence, although not favored, may be used in the rear of a property if not facing on another street. Chain link fence shall not be erected in a location that is visible from the street or is in front of the setback line. Chain link or privacy fence shall not exceed six (6) feet in height and shall generally be restricted to side and rear yards. Front yard fence shall be permitted only where allowed by guidelines. A parking lot, automobile dealer, junkyard, yard storage facility, or any similar use shall have solid fencing to prevent headlight and unsightly scene interference with the enjoyment of the neighborhood in general. Alternatively, properly landscaped mounds may be approved for installation around a parking area. Box wire, chicken wire and wire fences in general shall be discouraged.

(C)   Signs are regulated by Chapters 3375, 3377, 3379 and 3381, C.C., but shall also be in keeping with the character of the adjacent environment. Excessive size and inappropriate placement results in visual clutter and shall be avoided. A good sign should relate harmoniously to exterior building material, texture and color; express a simple, clear message; and contain a minimum number of words.

(D)   Mechanical systems shall be screened by appropriate fence, mound or planting and are generally prohibited from any front yard.

(Ord. 1515-89.)

3116.14 - Standards for demolition.

The following standards shall apply to the evaluation of the appropriateness of a proposed demolition:

Demolition of an historic or contributing property or architectural feature constitutes an irreplaceable lose to the quality and character of a listed property or district. No person shall demolish any structure or architectural feature now or hereafter in a listed property or district until he or she has filed with the commission an application for a certificate of appropriateness setting forth the intent to demolish such structure or architectural feature together with a written statement that such structure or architectural feature is not historically or architecturally significant or otherwise worthy of preservation and the reasons the applicant is seeking to demolish same.

If seeking to demolish an entire structure or major portion thereof, the applicant shall also submit definite plans for reuse of the site, evidence of commitment for funding of the new project, a timeframe for project initiation and completion and an assessment of the effect such plans will have on the character and integrity of the listed property or district.

The commission shall be guided in its decision thereon by balancing the historic, architectural, and cultural value of the structure or architectural feature and the purposes of this chapter and of the chapter pertinent to the subject property against applicant's proof of any unusual and compelling circumstances or substantial economic hardship in retaining the structure or architectural feature and the merit of the replacement project.

Upon the commission's determination that any such structure or architectural feature is not historically or architecturally significant or otherwise worthy of preservation, a certificate of appropriateness shall be issued. The applicant may then apply for or be issued a demolition permit as required by C.C. 4113.79.

(Ord. 1515-89; Ord. 1132-2008 Attach. (part).)

3116.15 - Criteria to determine substantial economic hardship.

The following criteria shall be used for all applicants to determine the existence of a substantial economic hardship:

(1)   Denial of a certificate will result in a substantial reduction in the economic value of the property;

(2)   Denial of a certificate will result in a substantial economic burden on the applicant because the applicant cannot reasonably maintain the property in its current form;

(3)   No reasonable alternative exists consistent with the architectural standards and guidelines for the property;

(4)   The owner has been unable to sell the property.

(Ord. 1515-89.)

3116.16 - Criteria to determine unusual and compelling circumstances.

The following criteria shall be used for all applicants to determine the existence of unusual and compelling circumstances:

(1)   The property has little or no historical or architectural significance.

(2)   The property cannot be reasonably maintained in a manner consistent with the pertinent architectural standards and guidelines.

(3)   No reasonable means of saving the property from deterioration, demolition or collapse other than applicant's proposal exists.

Additionally, for the nonprofit-organization applicant it is infeasible to financially or physically achieve its charitable purposes while conforming to the pertinent architectural standards and guidelines.

(Ord. 1515-89.)

3116.17 - Certificate of appropriateness.

The certificate of appropriateness delineates the construction, reconstruction, alteration, demolition or site improvement approved. The certificate of appropriateness may contain text explaining, limiting, or establishing conditions for the approved construction, reconstruction, alteration, demolition or site improvement and any such text shall be considered part of the certificate of appropriateness.

(Ord. 1869-03 § 8.)

3116.18 - Approvals required.

The director shall issue no permit for the construction, reconstruction, alteration or demolition of any structure or architectural feature now or hereafter in a listed property or district except in cases excluded by C.C. 3116.23, unless the application therefore shall be certified under C.C. 3116.05 as involving no architectural feature or shall be accompanied by a certificate of appropriateness issued under C.C. 3116.09.

(A)   Except in cases excluded by C.C. 3116.23, the applicant may initiate the construction, reconstruction, alteration, demolition or site improvement only upon receipt of the certificate of appropriateness or clearance, and upon subsequently obtaining any or all building permits, registrations, zoning clearances, and other approvals required by Columbus City Codes.

(B)   No building permit, registration, zoning clearance, or other required approvals shall be obtained unless and until the issuance of the required certificate of appropriateness or clearance. The building inspector and/or director shall void any permit or approval issued prior to a required certificate of appropriateness.

(C)   Any construction, alteration, work, action, or site improvement not in compliance with, or contrary to that specifically approved in the certificate of appropriateness or clearance shall be a violation of this Planning and Historic Preservation Code.

(Ord. 1515-89; Ord. 1869-03 § 9; Ord. No. 1999-2012, § 6, 10-1-2012)

3116.19 - Rehearing.

(A)   If applicant desires rehearing before the commission to consider any unusual and compelling circumstances and/or substantial economic hardship unaddressed in the original application or hearing, applicant shall submit an application for rehearing to the commission through the historic preservation officer together with any alternate plan and evidence as to such circumstances and such hardship. Within forty-five (45) days of the commission's receipt of such request, it shall hold a public hearing at which to consider the applicant's evidence in response to its decision and any plan as an alternative thereto. Clear and convincing evidence shall be required for

the commission to find unusual and compelling circumstances and/or substantial economic hardship.

(B)   If the application is again denied, the commission shall clearly state in the record of the hearing the reason applicant failed to meet the test for unusual and compelling circumstances or substantial economic hardship.

(C)   If the application is granted after rehearing, the commission shall clearly state in the record of the hearing:

(1)   The clear and convincing evidence which was presented of unusual and compelling circumstances or substantial economic hardship; or

(2)   That the final plan is appropriate to the preservation of the district pursuant to the purposes, architectural characteristics, guidelines and standards of this chapter and of the chapter pertinent to the subject property; or

(3)   That, although inappropriate, such proposal due to unusual and compelling circumstances affects only the subject structure and not the district generally; and

(4)   Reasons why the project should proceed in light of the commission's charge to protect the public welfare from substantial detriment and derogation of the intent and purpose of this chapter and of the chapter pertinent to the subject property.

(Ord. 1352-93.)

3116.20 - Finding on rehearing.

If the commission finds that denial of a certificate of appropriateness will result in substantial economic hardship, it shall within the next ninety (90) days seek a mutually acceptable way to reduce the hardship. If at the end of said period no mutually agreeable solution has been found, a certificate of appropriateness shall be issued.

If the commission finds that clear and convincing evidence of unusual and compelling circumstances or a substantial economic hardship was not presented by applicant at or before the rehearing, it shall record its finding in writing and the historic preservation officer shall notify the applicant thereof within twenty (20) days of said finding. The applicant may choose to continue to work with the commission and staff to find appropriate design solutions or appeal the denial to the board of commission appeals on the same grounds.

(Ord. 1352-93.)

3116.21 - Right to appeal.

An applicant who, has been denied a certificate of appropriateness, may appeal the commission's decision to the board of commission appeals in accordance with the provisions of Chapter 3118 and the standards and criteria of this chapter.

Any owner affected by a notice which has been issued in connection with the enforcement of provisions of the Planning and Historic Preservation Code or the Zoning Code relating to architectural review, may petition the board of commission appeals for a hearing on all matters set forth in such notice in accordance with the provisions of Chapter 3118 and the standards and criteria of this chapter.

(Ord. 1515-89; Ord. 628-02 § 9; Ord. No. 1999-2012, § 7, 10-1-2012)

3116.22 - Failure to maintain.

No owner of a structure in a listed property or district shall fail to provide sufficient and reasonable care, maintenance and upkeep appropriate to ensure such structure's perpetuation and to prevent its destruction by deterioration. This provision shall be in addition to all other applicable code provisions. By resolution the commission shall present evidence of a violation hereof to who shall initiate appropriate action thereon.

(Ord. 1045-98 § 8; Ord. 628-02 § 10.)

3116.23 - Exclusions.

Nothing in this chapter shall be construed to prevent the construction, reconstruction, alteration or demolition of any structure or architectural feature in an historic district which the building inspector or housing inspector has designated as being in an unsafe or dangerous condition and required for the public safety pursuant to Chapter 4109 or 4709, C.C., respectively.

(Ord. 1515-89; Ord. 1869-03 § 4; Ord. 2229-04 § 13.)

3116.24 - Notice required from housing and building inspectors.

The housing inspector and the building inspector shall send a copy of any notice issued pursuant to Chapter 4709, C.C., or Chapter 4109, C.C., respectively, for property in a listed property or district to the pertinent commission. Said commission shall have the right to appeal any notice so issued within thirty (30) days from receipt of said notice according to the procedures established in the Housing Code, Title 45, or the Building Code, Title 41.

(Ord. 1515-89; Ord 2229-04 § 14.)

3116.25 - Severability.

The provisions of this chapter shall be deemed severable; and, if any such provision shall be held unconstitutional by a court of competent jurisdiction the decision of such court shall not impair any of the remaining provisions.

(Ord. 1515-89.)

3116.26 - Civil penalty.

In any civil action brought in a court of competent jurisdiction to enforce the provisions of this chapter, the city attorney may request that the court impose the following civil penalties.

Whoever makes site improvements or constructs, reconstructs or alters any structure or architectural feature now or hereafter in a district or listed property in violation of this chapter shall pay a civil penalty of not less than five hundred dollars ($500.00) nor more than twenty-five thousand dollars ($25,000.00).

Whoever demolishes a substantial part or all of any structure now or hereafter in a district or listed property in violation of this chapter shall pay a civil penalty of not less than ten thousand dollars ($10,000.00) nor more than twenty-five thousand dollars ($25,000.00).

Notwithstanding the civil penalty provision of this section, whoever causes, by willful action or willful neglect, any alteration of or demolition of any structure now or hereafter in a district or listed property in violation of this chapter shall be required to restore or reconstruct same in accordance with the pertinent architectural characteristics, guidelines and standards.

(Ord. 1352-93.)

3116.27 - Contents of notice of violation.

Whenever the director, or his or her designee, determines that there is a violation of any provision of the Planning and Historic Preservation Code or the Zoning Code relating to architectural review or of any rule or regulation adopted pursuant thereto, he or she shall give notice of such violation to the owner as defined in C.C. 3116.016, as hereinafter provided. Such notice shall:

(A)    Be in writing;

(B)    Include a statement of the reasons why it is being issued;

(C)    Allow a reasonable time for the performance of any act it requires;

(D)    Be served by any one (1) of the following methods:

    (1)    Personal service; or

    (2)    Certified mail; or

    (3)    Residence service; or

    (4)    Publication; or

    (5)    Regular mail service to an address that is reasonably believed to be either a place of residence or a location at which the owner regularly receives mail; or

(6)    Posting the notice of violation on or in the property, except that if a structure is vacant, then the notice shall be posted on the structure and one (1) of the above methods of service shall also be used.

(E)    Be available to any person upon request after payment of a reasonable fee to cover the cost of making a copy of the same.

Any notice served shall automatically become an order if a written petition for a hearing before the board of commission appeals is not filed in the historic preservation office ten (10) calendar days after such notice is served.

(Ord. 628-02 § 11; Ord. No. 1999-2012, § 8, 10-1-2012).

3116.28 - Evidence of service.

Written or oral acknowledgement by the owner of receipt of a notice of violation shall be evidence that the owner received the notice of violation. An appeal of the notice of violation by the owner pursuant to C.C. 3118.06 shall constitute evidence of written acknowledgement by the owner of service of notice of violation.

(Ord. 628-02 § 12.)